*J. Holmes, for the plaintiff.*

GOWEN v. NOWELL.

Where divers citizens, being taxed for the support of public worship by a parish of a denomination other than their own, bound themselves in a bond to defray each one his proportion of the expense of defending any suit against any one of their number for the recovery of such taxes, and of the cost of any other *egal* mode of resisting the payment thereof; it was holden that the parties were not guilty of maintenance, and that the bond was good.

*Debt* on bond. Upon oyer of the condition it appeared that the defendant and divers others, styling themselves members of

the first Baptist Society in *Sanford*, being assessed for the support of the *congregational* parish and ministry in that town, against their religious principles, which taxes they were " determined not to pay unless compelled thereto by law", bound themselves to pay each one his proportion of the expenses of defending any suit which might be commenced against any one of their number for such taxes, and of any other legal mode of resisting the payment thereof; provided the obligee should defend such suit, &c. to final judgment, &c. Whereupon the defendant demurred in law.

*Shepley*, in support of the demurrer, argued that the obligation was illegal and therefore void.

To carry it into effect the parties must be guilty of *maintenance*. It is true the doctrine of maintenance has formerly been carried to an unwarrantable extent; *Hawk. P. C. ch.* 83. *sec.* 7. *Moore* 715. 814. but its rigor was ameliorated and its true principles stated in *Howard v. Bell, Hob.* 91. The rule is, where the parties can be witnesses for or against each other, any assistance is maintenance; but where they cannot, they may lawfully combine and give aid. 3 *P. Wms.* 378. *Master v. Miller*, 4 *D. & E.* 340. *Poor & al. v. Robinson*, 11 *Mass.* 549, Here several persons are assessed, and the legality of the tax is the question to be tried. Some of the obligors might have been witnesses or jurors on the trial, and therefore the combination is maintenance.

It goes to prevent the due course of justice. 1 *Comyn on Contr.* 31. and authorities there cited. The public had an interest in the services of these obligors as jurors and witnesses; and if a small number may thus combine and disqualify themselves by becoming interested in the event of a suit, any number may. The principle itself is of dangerous tendency, and in times of great public excitement it might lead to the most ruinous consequences.

It is against the maxims of sound policy. *Vid.* the observations of *Ld. Mansfield* in *Jones v. Randall, Cowp.* 39. It tends to multiply and promote law-suits, by diminishing their expense; and it gives the people of a State or county the power, by such

Gowen *v.* Nowell.

an association, to prevent the execution of any law which they may see fit thus to resist.

*Emery,* for the plaintiff. The statutes against maintenance originated in the determination of the crown to break down the power of the barons, and prevent any extensive combinations of lord and vassal against their prince ; and they were directed to that object with marked severity. But the reason of the statutes and of the old decisions has long since ceased to exist. Yet even then, one might gratuitously support the suit of his poor kinsman, his neighbour, or his servant ; *Hawk. P. C. ch.* 83. 1 *Comyn on Contr.* 33. because this was not within the mischief which the statutes were designed to prevent. But the obligation in this case is very far from being a conspiracy to subvert public justice, or to obstruct the regular administration of the law. The parties were all of one religious denomination, involved, as they believed, in one common calamity, and having a common *interest* in the question to be tried ; and they combined as well they might, to lighten and equalize the burthen of defending their religious rights *by the law of the land.* And how can this be termed a combination to obstruct the course of public justice ? Their engagement has merely the effect of an extended application of the rule by which many causes on the docket are *consolidated* into one trial. The case of a policy of assurance is not materially different ; being a several engagement of the underwriters, and lawful though signed by a whole community.

The statute of 1811 respecting religious freedom gives the citizens the right to associate for the purpose of supporting public worship ; and by a liberal construction these obligors may be considered as a voluntary association, within the spirit of the statute. Had they been incorporated as a religious society, they might doubtless have raised money by vote to defend any law-suit against one of their number for an illegal tax affecting the rights of all; and why may they not voluntarily associate by *covenant* for the same purpose ?

Nor is any danger to be apprehended from a covenant of this sort in times of public excitement, which may not also be apprehended from every incorporated religious society. It is as easy,

by our laws, for any number of citizens to become members of a religious corporation, as to sign a bond. Such membership would be strictly lawful, and yet would operate to disqualify, as extensively as any voluntary combination whatever.

At the succeeding term in *Cumberland*, the cause having been continued *nisi*, the opinion of the Court was delivered as follows, by

MELLEN C. J. The payment of the bond in this case is resisted on the ground that the condition is against law, and void ; as it was intended to give the plaintiff a reimbursement of expenses which were expected to be incurred in defending one or more suits, under such circumstances as would render all concerned in giving him aid, and furnishing him with pecuniary means, guilty of the crime of maintenance. If this be true, the action cannot be supported.

It may be remarked in the first place that the condition contains a declaration of the obligors that they were determined not to pay certain taxes which had been assessed upon them, *unless compelled by law.* Their object seems to have been, not to oppose the law, but to have the merits of a question in which all professed to be interested legally decided ; and the presumption arising from their mode of proceding is that they intended that one action should be contested and decided in the proper tribunal, which would probably settle the question as it respected all placed in the same situation. Hence all engaged to bear their respective proportions of the expense which the plaintiff might incur in effecting the desired object. This appears, from the condition of the bond, to have been the intention of all the parties ; and this, the defendant's counsel contends, amounts to the offence of maintenance ; and that therefore, according to the case of *Swett & al. v. Poor & al.* 11 *Mass.* 549, the contract founded on these proceedings is vitiated.

Maintenance, in general, signifies an unlawful taking in hand or upholding of quarrels and sides, to the hindrance of common right. *Co. Lit.* 368. *b.* Maintenance in the country, is where one stirs up quarrels or suits in relation to matters wherein he is *no way concerned.* Those who have a reversion expectant on an estate tail ;—those who have a bare contingency of an in-

Gowen v. Nowell.

terest in the lands in question, which possibly may never come *in esse;*—heirs apparent, or husbands of such heirs, may maintain and give aid without being guilty of the offence. *Rol. Abr.* 115. 2 *Inst.* 564. *Bro. Maint.* 28. 53. So may those who are bound to warrant the lands in dispute ; *Bro.* 51. and those who have an equitable interest ; *Noy,* 100. *Sid.* 217. or have a common interest, as of a way, &c. by the same title. *Hawk. P. C.* 252.

From these cases and authorities it is clear that the obligors in the bond before us had an interest in the question referred to in the condition, equal, at least, to an equitable, or a merely contingent one, and that their object was not in any manner to cause a hindrance of common right. But it was contended by the defendant's counsel that the bond in question does operate as such an hindrance, and tends to prevent the due course of justice ; because it deprives *others* of the testimony of the obligors relating to the subject matter of the bond. It is true it may have that effect with respect to those who are *parties* to that contract, because a man may waive his own rights at his pleasure ; and if the obligee cannot call either of the obligors as a witness, nor the obligors have the testimony of each other touching the question in which they are all interested, it is because by *their own act* they have consented to waive their legal rights. But this transaction cannot affect third persons ; and the objection is not well founded as it regards those who are not parties to the bond; it being a principle of law well settled and acknowledged, that a witness, in whose testimony others have an interest, cannot, *by his own act,* deprive them of that testimony ; as by laying a wager, or declaring himself interested in the event of the suit, or by any other act, after the interest in his testimony has vested ; unless such act be done by the express or implied consent of those who have the interest.

But it was urged further that it is against sound policy and will tend to promote litigation, to support this bond. It is clearly not against morality ; and we do not perceive how sound policy can forbid a number of persons interested in the same question, and whose claims depend on the same general principle of law, from agreeing to defray jointly the expense which must be incurred in the decision of such question in a single cause, when

it is contemplated that such decision may and probably will put the controversy at rest. Surely such a course of proceeding ought not to be condemned as promoting litigation, when the obvious tendency and design of it was to prevent a multiplication of contested actions.

The contract into which the defendants have entered seems to be a fair one, with no unlawful intention, and infringing no man's rights; and we cannot but think the defence as far from being entitled to indulgence, as it is from being supported by legal principles.

*Declaration adjudged good.*