ANDREWS, administratrix vs. THAYER and others.

MAINTENANCE. *Definition — Burden of proof — Appearance of attorney, when prima facie evidence of authority — Transfer of chose in action.* ESCROW.

1. Where the bill of exceptions is not certified to contain all the evidence, this court cannot review the findings of fact, but will determine whether those findings support conclusions of law to which exception has been duly taken.

2. *Maintenance* is an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it.

3. The burden of showing whether there is maintenance in the prosecution of an action, is upon the defendant.

4. In an action upon a note and mortgage, the appearance of an attorney in behalf of either party is sufficient *prima facie* evidence of his authority and retainer, the case being distinguished from that of ejectment, where plaintiff's attorney is required to produce his authority or prove his retainer.

5. The fact that plaintiff's attorney, in such an action, " offered no proof at the trial as to his retainer, if any, or for whom he appeared, and, on being asked so to state on the argument, declined to state," will not sustain a conclusion of law that he was guilty of unlawful maintenance at the common law.

6. In case of a transfer of a chose in action pending a suit upon it, the suit is to be continued in the name of the original plaintiff, or the court may allow the transferee to be substituted. 2 Taylor's Stats. 1572. sec. 1.

7. Whether, if the original plaintiff dies after such transfer, the action may properly be revived and prosecuted in the name of the administrator, is not decided.

8. Where judgment was erroneously rendered against the plaintiff on the ground of maintenance, and there was no determination of the merits, this court, in reversing the judgment sends the cause back for a new trial, where the bill of exceptions is not certified to contain all the evidence.

9. Whether a note and mortgage, deposited in escrow and afterwards purloined from the depositary, or furtively taken and put in circulation without his or the maker's knowledge or consent, and without the terms and conditions of the deposit having been complied with, is valid in the hands of a purchaser or assignee for value without notice

— is not here decided. But it is intimated that the current of recent authority is strongly in favor of a negative answer. See *Walker v. Ebert*, 29 Wis.; *Kellogg v. Steiner*, Ib., and *Tisher v. Beckwith, ante*, p. 55; and *Burson v. Huntington*, 21 Mich., 415 (4 Am. R., 497).

10. The fact that one is a director of a railroad company, or even that he has a limited or *quasi* agency in behalf of the company, to procure the execution to it of notes and mortgages, will not prevent his receiving such a note and mortgage as an escrow. *B. & M. R. R. Co. v. Palmer*, 19 Wis., 574.

11. The note and mortgage here ran to a railroad company, and were delivered to one who was *then* a director of the company, and had received from the board of directors some authority (the precise nature of which does not appear) with respect to soliciting this and other mortgages. He testifies that he never delivered the papers here in question to the company or " any of its agents," but that they were purloined from him after he had resigned his directorship, and when he "held no official or other relation to the company." Dixon, C. J., is of opinion that if these were the facts, there was nothing to prevent his holding the papers in escrow at the time they were purloined. But the point is not decided.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for the foreclosure of a farm mortgage, complaint in the ordinary form. The circuit judge found the facts as follows: " This action appears by the record to have been originally commenced in the name of Jesse Andrews, the original attorney of record being De Witt Davis Esq. The record further shows, that on the 8th day of September, 1869, a supplemental complaint was filed herein for the purpose of reviving this action in the name of the administratrix of the original plaintiff, and on the same day a rule to show cause why this action should not stand revived in the name of the present plaintiff as administratrix was entered. The supplemental complaint sets out a history of the action, the death of the original plaintiff, the appointment of the present plaintiff as administratrix of the estate of the original plaintiff, the filing in this state in the probate court of certified copies of the letters of administration to and the administration bond given by the present plaintiff. This supplemental complaint is signed Per-

sis Andrews, by E. Mariner, her attorney, and is verified by Mr. Mariner. In this verification he testifies that he has had in his possession the note and mortgage set out in the complaint, ever since the spring of 1867. The supplemental complaint alleges, and the proof shows, that Jesse Andrews died the 20th of March, 1868. Mr. Mariner in this verification also testifies that he (Mr. Mariner) procured from the probate court, that appointed the present plaintiff administratrix, copies of her appointment and bond, and caused the same to be filed in the probate court of Walworth County.

" The deposition of the present plaintiff has been taken. In answer to the question, ' Are you the plaintiff in this action?' She answers: ' I am the *person named* as plaintiff in this action.' She further testifies that she has never seen, nor had in her posession the note and mortgage set forth in the complaint. She makes no claim of ownership of them, and says she does not own them ; (she having omitted to answer the question as to whether she owns them in her deposition, and it being stipulated to read her deposition as if she had so answered); that she has been informed that her husband disposed of them before his death ; that she does not know who owned them at the time this action was commenced, or who has owned them since ; and in reply to explicit interrogatories as to what steps she has taken relative to this suit, as to when it was revived, as to who her attorney in this action is, as to whether she has ever had any personal interviews or correspondence with any, and if so what attorney, relative to this suit, and as to whether she has ever retained or employed any attorney in this action, and if so whom, she answers : ' I have taken no steps in relation to this suit. I was informed, by letter, in November, 1869, that this suit was to be commenced or go on in my name,' (this was ten months after the suit was revived in her name), and that E. Mariner was to act as attorney. I never employed an attorney in this action, and never had any correspondence with one.'

" The inventory of the estate of Jesse Andrews does not in-

clude any mortgage in Wisconsin, though it includes notes in this state, but the amount of them is less than the amount due upon the note in this case, added to the amount due on another note in a case similar to this and tried on the same day with this in favor of the same plaintiff against Hollister B. Thayer and others, the amount of both being at the time of the inventory upwards of $2,900. It is therefore fairly to be inferred, and the court finds that in fact the mortgage was not included in the inventory. Mr. Mariner offered no proof at the trial as to his retainer, if any, or for whom he appeared, and on being asked so to state on the argument declined to state."

As a conclusion of law, the court found that a case of unlawful maintenance, at common law, had been made out on the part of the attorney who prosecuted the cause after and including the time of its revival in the name of the second plaintiff, and that for this reason the complaint should be dismissed, but without costs. From this ruling plaintiff appealed. The bill of exceptions being presented to the circuit judge to be signed and settled, defendant's counsel appeared and objected thereto on the ground that the court, having dismissed the cause for maintenance shown in the proofs, should equally refuse to entertain it for the purpose of settling a bill of exceptions, or for any other purpose, but the bill was signed and settled notwithstanding such objection.

*E. Mariner*, for appellant, contended that the doctrine of maintenance had been so toned down from its ancient rigor that it had long since come to be regarded as almost an obsolete curiosity of common law, and cited *Master v. Miller*, 4 Term R., 320; *Findon v. Parker*, 11 M. and W., 682; *Sedgwick v. Stanton*, 14 N. Y., 295, 297; *Wright v. Meek*, 3 C. Greene, 472. When at all recognized, the doctrine has been accepted with reluctance, and only as limited and restricted by the authorities. *Barker v. Barker*, 14 Wis., 142.

*Carys & Cottrill*, for respondent, [no brief on file].

DIXON, C. J. The bill of exceptions is not certified to contain all the evidence given on the trial, and therefore the findings of fact by the judge cannot be reviewed. We must take the facts as found, and cannot look into the evidence to see whether they were supported. We can, however, examine the conclusions of law, to determine how far the facts found sustain them. A proper exception for this purpose was taken, and upon that exception we think the plaintiff must prevail. There is nothing in the facts found to sustain the conclusion "of unlawful maintenance at the common law by the attorney who has prosecuted the action since and including its revival in the name of the present plaintiff." Such was the conclusion of law, and for that reason the complaint was dismissed. The facts found, and the evidence in support of them, some parts of which are recited in the finding, may tend to show that the action is not prosecuted in the name of the real party in interest, but they have no tendency whatever to show maintenance. It is stated in the finding that the plaintiff's attorney, Mr. Mariner, "offered no proof at the trial as to his retainer, if any, or for whom he appeared, and on being asked so to state on the argument, declined to state." This was no proof that Mr. Mariner had not been lawfully retained by some person claiming to own the note and mortgage, and claiming the right to prosecute the action in the name of the plaintiff, Mrs. Andrews.

There was evidence given on the trial tending to show that the plaintiff's intestate, Jesse Andrews, owned or claimed to own the note and mortgage in his lifetime, and probably when the action was commenced in his name before his decease, though it would appear that he had parted with his title or interest before his death, but to whom or under what circumstances, was not shown so far as the bill of exceptions discloses. In case of the transfer of a chose in action pending suit upon it, the statute provides that the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action,

2 Tay. Sts., 1572, § 1. It was not found by the court, nor does the record show, that any evidence was given tending to prove that Mr. Mariner had not been employed by the real party in interest to revive and prosecute the action. If Mr. Mariner had been so employed, then, though he made a mistake in supposing the action could be revived and prosecuted in the name of the administratrix, still it would not be maintenance on his part. We need not determine, therefore, whether or not the action was properly so revived and prosecuted in the name of the administratrix, in case the note and mortgage were transferred by her intestate after the action was commenced, and before his death, and we do not decide that question. It is enough for our present purposes that even if the action were not properly so revived, or even if the deceased, Jesse Andrews, never owned the note and mortgage at all, and the action was wrongly commenced in his name, these facts have no tendency to sustain the charges of maintenance. It appears from the facts found, and from the deposition of the plaintiff contained in the record, that she knew of and acquiesced in the revival and prosecution of the action in her name, so that it was not maintenance so far as she was concerned. At least her testimony, recited and relied upon in the finding of the court, fails to establish maintenance. Maintenance is defined to be an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it. Burrill's Law Dic. Tit. Maintenance; 4 Bl. Com., 134.

The burden of showing such offense in the prosecution of this action was upon the defendants. The case is not one, like ejectment, requiring the attorney for the plaintiff to produce his authority to appear and prosecute or to show that he has been retained. His appearance is *prima facie* evidence of his authority and retainer until some contrary proof is made. There was no such proof, or, at the most, the finding fails to state it or the record to disclose it. The recital that " Mr. Mar-

iner offered no proof at the trial as to his retainer " goes, there-
fore, for nothing. The question is what proof was offered on
the other side to show that he had not been retained, and the
finding shows none. It is found that he declined to answer a
question put to him on argument upon this subject. He had a
perfect right so to decline and his refusal under such circum-
stances proved nothing, so far as this court can perceive, except
the mere fact that he so refused. The conclusion of law of the
court being therefore erroneous upon the facts found, the judg-
ment must be reversed, and inasmuch as there has been no con-
sideration or determination of the case upon its merits by the
circuit court, and as we have not all the testimony before us or
it is not so certified, we think the cause must be remanded for
a new trial in that court.

Counsel for the plaintiff has discussed at some length the
merits of the several defenses contained in the answer and es-
pecially of the second defense. It may not be proper for us at
this time to give expression to any definite or final opinion, on
the question of law arising upon the facts stated in that defense,
which it seems were sustained on the trial by some testimony
of quite a strong and positive character. That question is,
whether a note and mortgage, deposited in escrow, and after-
wards purloined from the depository, or furtively taken and
put in circulation without his knowledge or consent, or the
knowledge or consent of the maker, and without the terms and
conditions of the deposit having been complied with, is valid in
the hands of a purchaser or assignee for value without notice.
The question thus presented, differs from that involved where
commercial paper once delivered has been purloined or wrong-
fully taken from the owner, and passed to the hands of a *bona fide*
holder for value. It relates to the inception or legal existence
of the paper itself, and involves the inquiry, whether the act
of purloining or taking wrongful possession of it by the payee
or any third person, can be substituted for a delivery by the
maker, which the law in general holds must be voluntary on

his part, in order to create a valid instrument for any purpose. This question has undergone very thorough examination within the last two or three years, in some of the English courts and in the courts of several of the states, and three cases of the kind have arisen and been decided by this court, *Ebert, v. Walker*, 29 Wis., *Kellogg v. Steiner*, 29 Wis., *Tisher v. Beckwith, ante, p.* 55. The authorities are collected in the case first referred to and note, but attention is particularly directed to the case of *Bruson v. Huntington*, 21 Mich., 415, 4 Am. R., 497. It is enough to say on this occasion that the tendency of these decisions, seems to be decidedly against the position assumed by counsel for the plaintiff.

The question whether Mr. Meacham, the depository, was in such sense an agent of the company, that delivery in escrow could not be made to him, is not ruled by the case of *Patterson v. Ball*, 19 Wis., 243, or that of *Truman v. McCollum*, 20 Wis., 360. He appears to have been one of the directors of the railroad company, and to have received some authority from the board in respect to soliciting this mortgage with others, but the precise nature or extent of his agency is not shown. His merely being a director would not have prevented his receiving the note and mortgage as an escrow, nor would a limited or *quasi* agency have done so. *Beloit, and Madison R. R. Co. v. Palmer*, 19 Wis., 574. He testified that he never delivered the papers to the railroad company or to "any of its agents," but that they were purloined from him after, as he thinks, he had resigned his directorship, and when he held no official or other relation towards the company. If this is true, then there would have been no objection to his holding them in escrow at the time they are alleged to have been purloined.

These remarks upon the two latter points, urged by counsel for the plaintiff (for we have been favored with no brief or argument on the part of the defendants), are not made with a view of deciding the questions, but more especially to invite attention to them, and, if possible, to aid in the trial and proper de-

termination of the case when it comes up again in the court below.

*By the Court*— Judgment reversed and cause remanded for a new trial as above indicated.