## CHIPMAN VS. TUCKER and others.

PROMISSORY NOTE: DELIVERY. *Negotiable paper, not delivered by maker or by his authority, void.*

1. A valid *delivery* is necessary to give legal existence to a deed or note; and this applies to *negotiable instruments* as well as to any other.

2. Where, therefore, a negotiable note, and a mortgage securing it, were placed in the hands of a mere custodian, who had at the time the character of an indifferent person between the parties, with an express understanding that the instruments were not to be delivered to the payee of the note except upon the happening of· a certain event, which never occurred, and the custodian, without any authority whatever, turned over the instruments to the payee, and suit was brought on them by one who had the rights of a purchaser in good faith, for value, before maturity, no facts appearing to charge defendant with negligence in allowing the instruments to be put into circulation: *Held*, that they are *void*.

APPEAL from the Circuit Court for *Winnebago* County.

Foreclosure of a mortgage executed by the defendants *Reuben J. Tucker and wife*, under date June 25, 1857, to secure a note of the former, of the same date, running to the Ripon & Wolf River Railroad Company, for $1,000, payable ten years from January 1, 1857, with interest payable annually. The mortgagors answered, in substance, that there had never been a valid delivery of the note or mortgage.

On the trial, plaintiff put in evidence the note in question, which was under seal, and also the mortgage, together with a bond of the above named railroad company, "in the form of an *allonge*," assigning the note and mortgage ·to the bearer as security for the payment of the bond.

For the defense, W. B. Felker, Esq., testified that he was agent for the Ripon & Wolf River Railroad Company, in 1857, to sell stock of that company and to take farm mortgages· in payment therefor, and as such agent procured the instrument in suit, with others of like character made by other persons residing at Winneconne; that in pursuance of the company's

instructions he represented to *Tucker* that these mortgages were. to be left with one Freeman M. Rowley; and that after the company got through taking stock subscriptions there, it was to call a meeting of the mortgagors, and if the latter decided at this meeting to deliver the mortgages to the company, and take its stock therefor, they could do so, but otherwise their mortgages were to be returned to them.   It was admitted by the plaintiff that no such meeting had ever been called. The witness further testified, that Freeman M. Rowley lived at Winneconne at the time of the delivery to him of said mortgages; "that he was an old resident of that place, and was in business, and one of the leading merchants there at that time;" that the company selected him (said Rowley) as the .person with whom the mortgages were to be left, and the mortgagors assented to it; that after the agents of the company got through taking stock subscriptions at Winneconne, there was a meeting in that village of certain of the officers and employees of the company, at which the witness was not present, and at which, he thought, the defendants and the other mortgagors were not present; that Rowley was elected a director at that meeting, as witness had heard, and that he afterwards acted as such; and that witness supposed that Rowley then and there delivered over the mortgages to the company.

The defendant *R. J. Tucker* testified that the note and mortgage in suit were not delivered to the railroad company with his knowledge or consent, and he had never since "assented or consented in any way" to such delivery, and had never received any stock of the company; that he heard of the delivery of the instruments by Rowley to the company, not long after they were taken; that he then went to Rowley and asked him where the mortgage was, and he answered that the railroad company had got it; that witness then asked him why the mortgages were gone without that meeting being called, and Rowley said he was afraid that those who gave the mortgages would vote them back, and not let them go into the

hands of the company. The witness further testified, that about the time just mentioned, or soon after, a company was formed, of which he was a member, "to take legal steps to resist these mortgages, or the payment of them," but he did not know "whether it ever amounted to anything;" and that he did not go to any of the officers of the company upon the subject. On his cross examination he said: "At the time the mortgage was executed, Mr. Brush told me to go to Rowley's to get my stock. I demanded my stock of Rowley three or four times. I never received it." In reply to a question of the court, he added: "I went to Rowley and asked him for my stock after I had executed the mortgage, but before the mortgages were delivered by Rowley to the railroad company. Since that time I have never demanded any stock." The witness further testified that he lived immediately adjoining the village of Winneconne, and that he "knew Rowley very well." Another witness for the defense testified that he lived in Winneconne in 1857 and 1858, and was one of the persons who gave these farm mortgages; that after it became known that Rowley had parted with the possession of them, to wit, in September or October, 1857, an association was formed, of which *Tucker* was a member, "for the purpose of employing counsel and endeavoring to get these mortgages back;" that he (witness) was appointed to act for that association, and, in its behalf, employed an attorney, by whose advice the witness applied to Rowley for the return of the mortgages, and was informed by him that the officers of the railroad company had taken them away without his consent; that the witness, acting for the association, did not go to see any of the other officers of the railroad company; and that, although attorneys were employed to commence suits, none were commenced, the reason for which the witness did not know.

The plaintiff, as a witness for the defense, testified that he had been for thirty years a brother-in-law of Freeman M. Rowley; that in June or July, 1858, he received the note and mort-

gage in suit from Thompson & Rowley, a firm then doing business in Winneconne; that he (plaintiff) was then residing, and had ever since resided, at Niles, Mich. ; and that since the date named he had been the owner of the instruments in suit.

As a witness in his own behalf, plaintiff testified, in substance, that before receiving the instruments in suit, he had been compelled to pay, in Boston, a note of Thompson & Rowley, indorsed by himself, to the amount of about $350 ; and that these instruments were turned out to him by Thompson & Rowley in repayment of that amount.

The court found as facts, that the note and mortgage in suit were never delivered by the mortgagors; that no consideration was ever received for them by the mortgagors; and that plaintiff received them from Thompson & Rowley by allowing them $300 or $350 upon a debt which he had previously paid for them, but that he was not a *bona fide* holder.  As a conclusion of law, the court held that defendants were entitled to judgment dismissing the complaint.  From such a judgment the plaintiff appealed.

*Felker & Weisbrod*, for appellant, argued that the note was given with the intention that it should be thrown upon the market to raise money upon, and to pass from hand to hand by delivery, and was in every sense commercial paper (*Clark v. Janesville*, 10 Wis., 136, 188 ; *Bushnell v. Beloit*, id., 195 ; *Knox Co. v. Aspinwall*, 21 How., U. S., 539 ; 2 Hill, 177 ; 1 Stockt. Ch., 667–9 ; *Gelpcke v. Dubuque*, 1 Wall., 176–206 ; id., 83 ; 2 id., 283 ; *Blake v. Supervisors*, 61 Barb., 149 ; Edwards on Bills, 61, and cases there cited); that, as the uncontradicted evidence shows that plaintiff took the note and mortgage in payment of a debt, he was a holder for value (23 Wis., 21 ; 25 id., 544); and that the note was properly indorsed. *Crosby v. Roub*, 16 Wis., 616 ; *Bange v. Flint*, 25 id., 544.

*Gabe Bouck*, for respondent, to the point that the note, even in the hands of a *bona fide* holder, was invalid, because, never having been delivered by the maker, it had no legal inception,

Chipman vs. Tucker and others.

cited *Andrews v. Thayer*, 30 Wis., 228; *Walker v. Ebert*, 29 id., 194; *Kellogg v. Steiner*, id., 626; *Tisher v. Beckwith*, 30 id., 55; *Everts v. Agnes*, 4 id., 343; *Wait v. Pomeroy*, 20 Mich., 425; *Burson v. Huntington*, 21 id., 415; *Whitney v. Snyder*, 2 Lans., 477; *Chapman v. Rose*, 44 How. Pr., 364; *Puffer v. Smith*, 57 Ill., 527; *Taylor v. Atchison*, 54 id., 196; *Putnam v. Sullivan*, 4 Mass., 45; *Nance v. Lary*, 5 Ala., 370; Edwards on Bills, 323, 452, et seq.; *Clark v. Sisson*, 22 N. Y., 312; *Hamilton v. Vought*, 34 N. J. Law (5 Vroom), 187; *Munn v. The Commission Co.*, 15 Johns., 55; *Powell v. Waters*, 8 Cow., 669. He also contended, upon the evidence, that the circuit court properly found the plaintiff not to be a *bona fide* holder.

COLE, J. The undisputed evidence shows that the defendant executed the note and mortgage in suit, and placed them in the hands of Freeman M. Rowley, under an arrangement, or with the express understanding, that there was to be subsequently a meeting of the mortgagors, who might execute, or had executed, mortgages running to the railway company, at which meeting such mortgagors were to consider and determine whether or not they would deliver their respective obligations to the company in exchange for stock; but in no event were these securities to be delivered until this meeting was held and determination had. Freeman M. Rowley was not authorized to do anything whatever with these securities, they being held by him as a mere custodian or depositary for safe keeping. Rowley was at this time an indifferent person, though it appears that he was soon thereafter chosen a director of the company; and he was selected by all parties concerned in the arrangement as a suitable depositary of these securities until it was decided whether they should be delivered. It further appears that the mortgagors never had any meeting to determine the question of delivery, and that the defendant never, in fact, either himself delivered, or authorized Rowley to deliver, the note and mortgage to the company, but that they were delivered with-

out his consent, knowledge or authority. These are undisputed facts in the case. The mortgage and note never having been delivered by the defendant, but having been surreptitiously put in circulation without his knowledge or consent, the single question is presented, whether they ever had any valid existence. The court below held that they were not valid obligations; and in this view we fully concur.

There is no claim or pretense that the defendant was guilty of any negligence or want of diligence in depositing these securities with Rowley for safe keeping. It appears that Rowley was an old resident of the place, and one of the leading merchants in business there at the time. He stood wholly indifferent between the company and the makers of these securities; and it would be unreasonable to impute negligence to the defendant because he did not suspect the fidelity or integrity of such a man, and deal with him as though he were already proven to be a knave. The question of negligence, therefore, being wholly out of the case, the further inquiry arises, whether, upon the undoubted facts, the note and mortgage ever had a legal existence or became valid obligations.

The doctrine is elementary, that delivery is an essential part or step in the making and execution of such instruments. In *Tisher v. Beckwith*, 30 Wis., 56, it is said: "It is essential to the validity of a deed that it should be delivered, and such delivery, to be valid, must be voluntary, that is, made with the assent and in pursuance of the intention on the part of the grantor to deliver it; and if not so delivered, it conveys no title. A deed purloined or stolen from the grantor, or the possession of which was fraudulently or wrongfully obtained from him without his knowledge, consent or acquiescence, is no more effectual to pass title to the supposed grantee, than if it were a total forgery, and an instrument of the latter kind had been spread upon the record. The only question which can ever arise to defeat the title of the supposed grantor, in such cases, is, whether he was guilty of any negligence in having

made, signed and acknowledged the instrument, and in suffer-
ing it to be kept or deposited in some place where he knew the
party named as grantee might, if so disposed, readily and with-
out trouble obtain such wrongful possession of it, and so be
enabled to deceive and defraud innocent third persons." The
same rule is recognized in *Andrews v. Thayer*, 30 Wis., 228,
though the question of delivery was not the real point of the
decision in the latter case. But that delivery is essential to
the validity of a deed or mortgage, is doubtless a doctrine so
familiar and elementary as to dispense with the necessity of
any reference to authority in its support. There having been
no delivery of the note and mortgage, they never had a legal
existence, or were never fully executed.

It is claimed, however, that, under the decisions in this state,
these securities stand upon the ground of commercial or nego-
tiable paper, and that all the rules and usages in regard to such
paper apply to them ; and the plaintiff, being a *bona fide* holder
for value, must be protected. Whether the plaintiff is an in-
nocent holder for value is a question of some doubt upon the
evidence ; but we do not choose to consider it, nor shall we
place our decision upon the ground that he is not to be regard-
ed in that light. The note or instrument accompanying the
mortgage was under seal, payable to the order of the railroad
company ; and it and the mortgage were transferred by the
bond of the company attached thereto, as in *Crosby v. Roub*, 16
Wis., 616. Assuming that the securities possess all the essen-
tial qualities of commercial paper, does this view aid the plaint-
iff ? " As a general rule, a negotiable promissory note, like
other written contracts, has no legal inception or valid existence
as such, until it has been delivered in accordance with the pur-
pose and intent of the parties." *Burson v. Huntington*, 21
Mich., 416, 431, 432. In this case will be found an able and
quite discriminating examination and discussion of the author-
ities bearing upon this question; and the conclusion reached
by the court accords with sound principle. It is, that delivery

of a promissory note by the maker is necessary to a valid inception of the contract, and that, until there is a delivery, the note has no vitality, and the rules of commercial paper have no application to it. And such, in substance, was the language of this court in *Walker v. Ebert*, 29 Wis., 194, and *Kellogg v. Steiner*, id., 626, when considering the question as to the validity of a note to which the maker's signature has been procured through fraud, or where it was alleged that the paper was a forgery. "The inquiry in such cases," says Chief Justice DIXON, "goes back of all questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity and without notice. It challenges the origin or existence of the paper itself; and the proposition is, to show that it is not in law or in fact what it purports to be, namely, the promissory note of the supposed maker. For the purpose of setting on foot or pursuing this inquiry, it is immaterial that the supposed instrument is negotiable in form, or that it may have passed to the hands of a *bona fide* holder for value. Negotiability in such cases presupposes the existence of the instrument as having been made by the party whose name is subscribed; for until it has been so made and has such actual legal existence, it is absurd to talk about a negotiation, or transfer, or *bona fide* holder of it, within the meaning of the law merchant." *Walker v. Ebert*, p. 197. These remarks are strictly applicable to the peculiar circumstances of this case. The defendant is sought to be held responsible on a contract which he never executed. True, he signed these papers; but he did not deliver them. He kept control of the securities as fully as though he had retained manual possession of them. The witness W. B. Felker, who acted as agent of the company in the transaction of the business, testified that, "if sufficient funds were not raised by means of these mortgages, and the company could provide means otherwise to secure the completion of the road to Winneconne, the mortgagors still had their option whether they would deliver their mortgages to the company and take stock

therefor, or whether they would retain them." The instruments never became operative by delivery, any more than though they had been stolen from the possession of the defendant and put in circulation. And to say that the rules and principles of law in regard to negotiable paper preclude the defendant from showing that the instruments were never delivered and consequently never had any legal existence, is, as it seems to us, to extend those rules and principles beyond their just application. *Bona fide* holders of commercial paper should be protected in all proper cases, but they are not the only parties who have rights which the courts are bound to respect.

Nor does the principle apply, that when one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. Rowley had no legal power or right to part with these securities by delivering them to the company. If he had purloined them from the possession of the defendant, and delivered them, the plaintiff's title would have been as good to them as it is now. For the instruments were never delivered, and were not intended to be delivered until further action had been taken, and remained wholly within the control of the defendant. See *Thomas v. Watkins*, 16 Wis., 550. But this whole field of discussion is so thoroughly gone over in *Burson v. Huntington*, *Walker v. Ebert*, *Kellogg. v. Steiner*, and cases there referred to, that it is deemed unnecessary to make further remarks. See *Puffer v. Smith*, 57 Ill., 527; *Butler v. Carns*, 37 Wis., 61.

There having been no delivery of the note and mortgage, we think the court below was right in holding that they were not valid obligations against the defendant.

*By the Court.* — The judgment of the circuit court is affirmed.