DAVIES, Respondent, vs. STOWELL and others, imp., Appellants.

*November 29 — December 16, 1890.*

*Maintenance.*

Where the defendants, in pursuance of a conspiracy and by fraudulent representations, induced several persons to buy from them worthless shares of corporate stock, it is not maintenance for such persons to contribute to a fund for the prosecution of an action by one of them as a test case to determine the liability of the defendants.

APPEAL from the Superior Court of *Milwaukee* County.

Action to recover damages on account of the fraud of the defendants whereby the plaintiff was induced to purchase certain shares of corporate stock. The defendants pleaded in abatement that the action originated and was being carried on in pursuance of an unlawful agreement by which the plaintiff and certain other persons who had no interest in the action contributed to and bore the expenses of the action. They also pleaded to the merits, denying the fraud.

A preliminary examination of the plaintiff was had under sec. 4096, R. S., and thereafter the defendants petitioned the court for an order dismissing the action on the ground of unlawful maintenance. From an order denying the prayer of the petition the defendants appealed. Other facts will appear from the opinion.

For the appellants there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *J. G. Flanders*.

For the respondent there was a brief by *Austin, Runkel & Austin*, and oral argument by *R. N. Austin*.

Cole, C. J. It is insisted that the court below erred in refusing to grant the application and prayer of the defendants to dismiss this action, on the hearing of the rule to show cause. It is said the testimony of the plaintiff on the preliminary examination, and the affidavits filed to resist the petition to dismiss the suit, established beyond controversy that the action was commenced and has been prosecuted by contributions of money from other persons than the plaintiff, who are strangers to the action but have combined together to raise a common fund to carry on the litigation. Such an agreement or engagement on the part of such persons, it is argued, constitutes the offense of maintenance which, when it is brought to the attention of a court as it was on the hearing of the rule, the court will refuse further to entertain the suit, but will dismiss it. In *Andrews v. Thayer*, 30 Wis. 228, Chief Justice Dixon adopts the definition of "maintenance" as given in Burrill's Law Dictionary and other authorities. He defines it to be "an officious intermeddling in a suit that noway belongs to one, by maintaining or assisting either party with money or otherwise." In *Barker v. Barker*, 14 Wis. 131, the court held, with such qualifications as the modern authorities have established, that the common law in regard to cham-

perty prevails in this state, and the same is doubtless true
as to the kindred offense of maintenance.   But the burden
of showing such an offense in the prosecution of the action is
surely upon the defendants; and do the facts establish main-
tenance? The terms of this definition obviously do not include
all kinds of aid in the prosecution of defenses of another's
cause, and it has therefore always been held not to extend
to persons having an *interest* in the thing in variance, nor
to persons acting in the lawful exercise of their profession
as counsel or attorneys at law.  *Bayard v. McLane*, 3 Har.
(Del.), 208.   Nor does the doctrine of the common law as
to maintenance apply to persons who either have a legal
interest in the suit prosecuted by them or who act under
the *bona fide* belief that they have.  *McCall's Adm'r v.
Capehart*, 20 Ala. 526.

The agreement as to the contribution of money to prose-
cute this action grew out of these facts.   The defendants
are charged in the complaint with having conspired to de-
fraud the plaintiff and others by organizing, or pretending
to organize, two mining corporations, and selling shares of
spurious or worthless stock pretended to be issued by such
corporations.   The plaintiff alleges that he was induced by
the fraudulent representations and practice of the defend-
ants to buy 100 shares of said stock, for which he paid
$250.   It is alleged that the defendants, in furtherance of
their fraudulent scheme and conspiracy to cheat and de-
fraud by false representations, induced others to purchase
some of this stock.   The plaintiff in his affidavit says, in
effect, that the defendants sold the stock of one of the com-
panies to sundry persons to a large amount, and issued to
such persons certificates of stock, reciting that the stock so
issued was fully paid, and that the charges of conspiracy
and fraud made in the complaint as to him were applicable
also to all the transactions and dealings of the defendants
in respect to the issue and sale of stock in both corpora-

tions to other parties. It appears that these persons who had thus been defrauded, or supposed they had been wronged, met and consulted together as to the best way to obtain legal redress for their wrongs, and they concluded that actions should be brought by the various purchasers of the stock to recover the money they had respectively paid to the defendants on the sale and purchase of it. And it was then agreed that a certain per cent. should be paid on the stock held by each person for the prosecution to judgment of a test case, to determine the liability of the defendants to refund the money which they had received for the stock. The plaintiff and others contributed to the fund to prosecute this action and other suits which might be brought against the defendant arising out of similar transactions and dealings in the sale of the worthless stock.

This seems to be the nature of the agreement, and the object to be attained by it by those who contributed money to prosecute the suit. The question is, Do they show or establish the charge of unlawful maintenance in carrying on the action? It appears to us they do not. The persons who have made these contributions are interested in the same question, whether, under the circumstances, the defendants are liable to refund the money they have paid for the stock. That liability would depend upon the testimony produced to show or establish such legal liability. We do not perceive how any principle of law or of public policy is violated in allowing a number of persons interested in the same question, and whose claims depend upon the same principle of law, to contribute to defray the expenses which must be incurred in the decision of such a question by a test case. It is true, the result of the trial of one case may not put at rest all litigation growing out of the various purchases and sales of stock, but it will enable any one about to bring a suit to find witnesses and procure evidence which may tend to establish his claim. The practical effect of a

suit and recovery by one party wronged will inure to the benefit of others similarly situated.

The learned counsel for the defendants suggests that the judgment in this action could not be used to establish the right or prove the case of another party. This may be so, still it will be a great advantage to another party, about to bring a suit, to have the question of the liability of the defendants determined in this action. That proposition seems to be very obvious. Suppose it was a question as to the validity of a tax which affected a large number of tax-payers. Could they not contribute money to prosecute one suit to settle the question, without being guilty of maintenance or violating any principle of public policy? It seems to us they might lawfully agree to prosecute such a suit, as the persons in this case have agreed to prosecute this, which involves a question in which they are all interested or believe they have an interest in having decided.

But we are not bound to look at the results of any particular suits, but the inquiry is, Was there any ground on which the parties making this agreement and contributing their funds might reasonably suppose they had a common interest in having the liability of the defendants decided by a proper tribunal? It appears to us they certainly had a common interest in the decision of such a question, because it concerned the interests of all of them. If so, the agreement to prosecute the action cannot be held to amount to maintenance. *Findon v. Parker*, 11 Mees. & W. 675; *Dorwin v. Smith*, 35 Vt. 69; *Gowen v. Nowell*, 1 Me. 292. The arrangement made does not necessarily imply anything that the law condemns as maintenance. Says Lord ABINGER, in *Findon v. Parker*, "The law of maintenance, as I understand it upon the modern constructions, is confined to cases where a man improperly, and for the purpose of stirring up litigation and strife, encourages others either to bring actions or to make defenses which they have no right to

make." Now, it is very clear to our minds that the parties who made the agreement about contributing to the prosecution of this action had a common interest in settling the question as to the liability of the defendants to answer as to the alleged frauds in selling stock, and that there was nothing illegal in the agreement. It did not amount to maintenance at common law, under the modern authorities.

*By the Court.*— The order of the superior court is affirmed.

See note to this case in 10 L. R. A. 190.— REP.