**GOLDEN COMMISSARY CORPORATION and William G. Carter, Appellants,**

v.

**Carl L. SHIPLEY, Appellee.**

**No. 2468.**

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 9, 1959.

Decided Feb. 10, 1960.

H. Clay Espey, Washington, D. C., for appellants.

Donald H. Dalton, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

A seven days' trial has produced here a record containing more than 1,200 pages of reporter's transcript with voluminous exhibits, and yet we find the material facts of the case largely undisputed. Appellants say that the lengthy trial and bulky record are due to appellee's filing of a general denial,

thereby forcing appellants to prove many facts which should have been admitted. Appellee counters by saying that the complaint, instead of containing a short and plain statement of the claim, was so lengthy, vague and redundant that it could not be intelligently answered and that he was forced to file a general denial. There is a degree of merit to both contentions.

The background of this case is a disputed boundary line. Golden Commissary Corporation, one of appellants here and hereafter referred to as the corporation, purchased a tract of land in Georgetown on which it intended to erect a commercial building. A survey of the purchased land indicated that the rear fences of a number of adjoining lots extended a slight distance over the true boundary line. The corporation then endeavored to reach an amicable agreement with the owners of the various lots and reached a satisfactory agreement with all of the owners except a Mrs. Kittelle. She orally agreed to the proposed settlement and the corporation sent her two copies of the agreement, both signed by it, together with a check for $30, with a request that she sign, return one copy and cash the check. However, about this time a group of property owners in Georgetown banded together for the purpose of seeking a rezoning of certain property, including that recently purchased by the corporation, the effect of which would be to prevent the corporation from erecting the proposed commercial structure. Mrs. Kittelle joined this group and as a result did not sign the settlement agreement or cash the check, although she retained both. The group of property owners engaged Carl L. Shipley, appellee here, as their lawyer to represent them in the proposed rezoning, and raised a fund of $500 as his compensation. Mrs. Kittelle contributed $20 to the fund. The effort to obtain a rezoning eventually proved unsuccessful.

On June 17, 1954, Mrs. Kittelle was notified by the corporation that in view of her refusal to sign the settlement agreement, suit was being filed by the corporation against her in the Landlord and Tenant Branch of the Municipal Court for possession of the disputed strip. (This strip, less than one foot wide at one end of the lot and less than one and a half feet at the other end, covered approximately twenty-three square feet.) Mrs. Kittelle went to see Mr. Shipley and urged or demanded that he represent her in the landlord and tenant suit, believing that this suit was an outgrowth of the zoning controversy and that it was his obligation to represent her. He protested that his obligation was limited to representation in the zoning matter, but finally agreed to represent her in the landlord and tenant court. His agreement, embodied in the form of a letter to her dated June 18, 1954, referred to his representation of the group "in certain matters having to do with rezoning the area, boundaries, titles, etc.," and stated: "As your attorney in the matter referred to I will do all things necessary to protect your interests in case number L & T 31299–54 in the Municipal Court for the District of Columbia."

Mr. Shipley then prepared and filed an answer for Mrs. Kittelle in the landlord and tenant action, pleading title to the disputed strip. Under Code 1951, § 11–738, when such a plea is filed, accompanied by an undertaking approved by the court, the case is then certified to the United States District Court for the District of Columbia where the issue of title is tried. Despite pendency of the action Mrs. Kittelle went to Europe. This was done apparently on Mr. Shipley's assumption that the filing of the plea of title with a "nominal" undertaking would result in transfer of the case to the District Court and trial would not be had for a considerable length of time. However, the landlord and tenant court would not approve a nominal undertaking. Whether it ever fixed the exact amount of the required undertaking is not clear from the record, but on July 15, 1954, Shipley wrote to Mrs. Kittelle in Europe that the court required a bond of approximately $5,000 and that he could not advise her to post such an undertaking. No undertak-

ing was filed and the plea of title was stricken and judgment for possession by default was taken.

On August 4, 1954, a writ of restitution was executed by removing the fence at the rear of Mrs. Kittelle's property. This action surprised Mr. Shipley who had assumed that no such action would be taken while Mrs. Kittelle was absent from the country. Two days later he filed on Mrs. Kittelle's behalf an action in the District Court in trespass against the corporation and its president, Mr. Carter, claiming damages of $3,001. The theory of this action apparently was that the judgment in the landlord and tenant action settled nothing and that the question of title would be tried in the trespass action. Mr. Shipley promptly notified Mrs. Kittelle in Europe of the filing of this action. Carter and the corporation moved for summary judgment in their favor in the trespass action, but the motion was denied and the case came on for trial in May 1956. Mrs. Kittelle was present and ready to testify, but the District Court directed a verdict against her on her counsel's opening statement.

After Mrs. Kittelle had paid the costs assessed against her in the trespass suit, she was invited to come to the office of the attorney for the corporation, and after some negotiations a "general and mutual release" was entered into between Mrs. Kittelle, the corporation and Mr. Carter. Thereafter, at the request of the attorney for the corporation, she also executed a "release of attorney-client privilege" involved in Mr. Shipley's prior representation of her. Later the present action was brought by the corporation and Carter against Shipley. The complaint sought damages for "unlawful maintenance, malicious use of process and malicious prosecution." Apparently the theory of the action was that Shipley was responsible for filing the trespass action, that the action was groundless and maliciously brought, and that Shipley was personally liable for any injuries flowing therefrom.

A motion to dismiss the action was granted with respect to the claims for malicious use of process and for malicious prosecution. An appeal was taken from that order but we held it not final and appealable and dismissed the appeal. Golden Commissary Corporation v. Shipley, D.C.Mun.App., 134 A.2d 324. The case then proceeded to trial on the issue of unlawful maintenance and resulted in a directed verdict for Shipley.

■ We now consider the correctness of the order dismissing the claims of malicious use of process and malicious prosecution. The law of this jurisdiction respecting malicious prosecution of civil claims has been stated in Soffos v. Eaton, 80 U.S. App.D.C. 306, 152 F.2d 682; Melvin v. Pence, 76 U.S.App.D.C. 154, 130 F.2d 423, 143 A.L.R. 149, and Peckham v. Union Finance Co., 60 App.D.C. 104, 48 F.2d 1016. Viewed in the light of the standards set down in those cases, appellants' amended complaint failed to state facts to sustain a claim for malicious prosecution. No special injury was sustained by appellants in the District Court trespass case, nor was any of their property seized. Peckham v. Union Finance Co., supra; Melvin v. Pence, supra. Granting that appellants were put to the expense of defending, nevertheless they suffered no more than is normally incident to defending any civil suit. Moreover, appellants were sued only once, and their claim does not fall within the double-suit situation discussed in Soffos v. Eaton, supra. After a successful trial appellants were not forced to defend an "unconscionable appeal." Holt v. Boyle Brothers, Inc., 95 U.S.App.D.C. 1, 217 F.2d 16. Finally, there were no allegations in the complaint to bring it within the "one suit plus" situation discussed in Davis v. Boyle Bros., D.C.Mun.App., 73 A.2d 517, 520. The most that can be said for the amended complaint is that it charged that civil proceedings were brought against appellants maliciously and without probable cause and that such proceedings terminated in their favor. This did not

constitute malicious prosecution and the trial court correctly dismissed this claim.

What we have said also disposes of the claim for malicious use of process. The actions for malicious use of process and malicious prosecution are essentially the same. Nolan v. Allstate Home Equipment Co., Inc., D.C.Mun.App., 149 A.2d 426; Davis v. Boyle Bros., Inc., D.C.Mun. App., 73 A.2d 517.

If we treat the claim as one for malicious abuse of process, though not so designated, the result is the same. The process of the court was used for its usual and normal purpose. There was no abuse of process. See Hall v. Hollywood Credit Clothing Co., D.C.Mun.App., 147 A.2d 866, and cases there cited.

Turning to the trial of the claim of maintenance, the question is somewhat more difficult. Although the common law action for maintenance and champerty, in some modified form, probably exists in this jurisdiction,[1] the action for maintenance is so rare in modern times that the law on the subject is neither settled nor clear.[2] Practically all the cases in this jurisdiction under the heading of maintenance and champerty are restricted to cases dealing with champertous contracts. Here we have no claim of champerty or any attempt to prove it. The editors of American Jurisprudence, admitting the difficulty of defining maintenance with any certainty or exactness, offer the following definition as one having received judicial sanction: " * * * maintenance means the act of one improperly, and for the purpose of stirring up litigation and strife, encouraging others either to bring actions or to make defenses which they have no right to make, and the term seems to be confined to the intermeddling in a suit of a stranger or of one not having any privity or concern in the subject matter, or standing in no relation of duty to the suitor." 10 Am.Jur., Champerty and Maintenance, § 1.

Applying the above definition to the case at hand, the question raised is whether Mr. Shipley was acting as Mrs. Kittelle's attorney when he filed the trespass case. If he was her attorney, he was no stranger to the action but stood in the relation of duty to her. The Wisconsin Supreme Court has said that maintenance "has * * * always been held not to extend to persons having an interest in the thing in variance, nor to persons acting in the lawful exercise of their profession, as counsel or attorneys at law." Davies v. Stowell, 78 Wis. 334, 47 N.W. 370, 371, 10 L.R.A. 190, 191.

Mrs. Kittelle, as witness for appellants, established by her own testimony that Shipley acted as her attorney in the trespass case. She admitted that she was promptly informed of the bringing of the action, that she consulted with him about it, cooperated with him in preparation for trial, and appeared with him for actual participation in the trial. She testified generally that he had authority to do anything he thought necessary to protect her interests.

Appellants make much of the fact that Shipley paid the cost of filing the trespass action and never sought to be reimbursed by Mrs. Kittelle. A contingent fee agreement by which an attorney agrees in case of no recovery to make no charge for services or costs is champerty. Lawrence

---

1. Peck v. Heurich, 167 U.S. 624, 17 S.Ct. 927, 42 L.Ed. 302; Johnson v. Van Wyck, 4 App.D.C. 294.

2. In 10 Am.Jur., Champerty and Maintenance, § 33, it is stated that an action for damages for maintenance is "of infrequent occurrence, and rarely are examples of it found in modern times," but it adds that "in an appropriate case the action of maintenance will be supported by the courts of this day." It is noteworthy that modern works on the subject of torts, such as Prosser, Torts (2d ed. 1955), Harper and James, Torts (1956), and Cooley, Torts (4th ed. 1932), make no reference to the tort of maintenance.

v. Commodore Navigation Corp., 2 Cir., 108 F.2d 563; Peck v. Heurich, 167 U.S. 624, 17 S.Ct. 927, 42 L.Ed. 302. But Shipley's uncontradicted testimony was that the money for the filing fee came from the $500 fee he had received from the group of which Mrs. Kittelle was a member. It is evident that Shipley did not bind himself to be personally responsible for the costs of the trespass action because Mrs. Kittelle herself paid costs of more than $130 assessed against her in that case and made no claim for reimbursement from Shipley. And it is just as plain that no contingent fee arrangement existed between Mrs. Kittelle and Shipley.

Appellants, however, urge that the issue of maintenance should have been submitted to the jury because, they say, there was proof that Shipley not only filed a groundless suit but also filed and prosecuted it "with actual and personal malice, as well as legal malice." Even if it be conceded that Shipley failed to exercise the best judgment in bringing the action and that at times during the litigation displayed a feeling of resentment and anger, in our opinion it would constitute a dangerous precedent to permit a lawyer to be charged with maintenance merely because he filed on behalf of a client an action which proved to be without merit and during the course of the litigation permitted his personal feelings to become involved. Our conclusion is that the trial court was right in directing a verdict for Shipley on the maintenance claim.

Affirmed.