TRON ET AL v. LEWIS.

[No. 4,259. Filed February 17, 1903. Rehearing denied May 21, 1903.]

CHAMPERTY AND MAINTENANCE.—*Contracts.*—*Attorney and Client.*—A firm of attorneys and six property owners entered into a written agreement that each property owner should institute a suit for damages and injunction against defendants; that one case should be pushed by all, and if it should fail, each property owner should contribute his proportion of the costs, and if it should succeed, then each case was to be pressed for trial. The contract provided that the attorneys should receive no compensation unless successful, and if successful they should receive an amount equal to one-half of the sum collected by them. *Held,* that the contract was not champertous. *pp. 183–186.*

Tron *v.* Lewis.

INTOXICATING LIQUORS.—*Unlawful Sales.*—Where one licensed to sell liquor in a certain room provided tables in the grounds adjoining and employed young men, some of them minors, as waiters, who served the patrons at such tables, the waiters being supplied at the bar with tickets which they used in payment for liquors, and which were paid for by them at such rate that they received for their services ten cents for sales amounting to $1.10, such sales, whether made by the waiters or by the licensee, were unlawful. *p. 188.*

NUISANCE.—*Intoxicating Liquors.*—*Injunction.*—Where, in a suit to enjoin as a nuisance a resort in which it was alleged intoxicating liquors were unlawfully sold, the evidence showed that the business conducted by defendant constituted a public nuisance which was specially injurious to the plaintiff, the continuation of the resort was properly enjoined without regard to the question as to the persons who made sales of intoxicating liquors in themselves unlawful. *p. 189.*

From Boone Circuit Court; *B. S. Higgins*, Judge.

Suit by Zimri C. Lewis against William Tron and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*J. B. Kealing*, *M. M. Hugg* and *S. M. Ralston*, for appellants.

*E. F. Ritter*, for appellee.

BLACK, P. J.—This cause was commenced in 1898, in the Marion Circuit Court, from which the venue was changed to the court below. It was a suit of Zimri C. Lewis, the appellee, against the appellants, William Tron and the Terre Haute Brewing Company.

In the complaint it was shown that the appellee was the owner of a certain lot in the city of Indianapolis, on which was a house, No. 2520 North Capitol avenue, which was occupied, and for thirteen years had been occupied, as a residence by the appellee and his family, consisting of himself and his wife and their four children, two sons and two daughters, the oldest a daughter seventeen years of age, and the youngest a son five years old. The house contained nine rooms, and was well furnished and in good condition. It was in a locality thickly settled and devoted

to residence purposes. There were no manufacturing establishments or business houses within ten squares of it, except a few drug stores and groceries, and the business place of the appellants hereinafter mentioned. The people residing in the neighborhood were intelligent and well behaved, and but for the matters complained of against the appellants the appellee's premises would rent for $25 per month, and for the five preceding years would have rented for that sum. It was charged that the appellants entered into collusion, for their personal profit, to establish and maintain a resort, mainly for the purpose of selling intoxicating liquors and inducing persons to visit such place, and there to buy from the appellants and drink such liquors, and for the purpose of furnishing a place where persons might congregate, especially in the evenings and nights and on Sundays, during the summer months, to buy of the appellants and drink such liquors in defiance of law. In pursuance of such plan and purpose, the appellants selected, as the place for such resort, a tract of land of about six acres, extending from Capitol avenue to Illinois street, about 500 feet along the north side of Fall creek, and extending north from the creek about 400 feet. This tract lay immediately across Capitol avenue from the appellee's residence. The Terre Haute Brewing Company, appellant, had owned this tract for about three years before the commencement of this suit. The appellants proceeded to improve and beautify the grounds by laying out grass-plats, walks, and driveways, and erecting at various places summerhouses of beautiful design and finish. They also erected two large buildings, one on the plan of a dwelling-house and the other designed for a clubhouse, the former having about fifteen rooms, one of them on the first floor, and fronting on Capitol avenue, being designated and used as a saloon and barroom, and the other rooms being arranged for the accommodation of men and women who desired to occupy them for the purpose of drinking intoxicat-

ing liquors and indulging in lascivious conduct. Both of these buildings, it was alleged, were furnished and adorned in the most attractive manner, with wine-rooms. Scattered over the grounds at various places, were tables, seats, and other conveniences for the comfort of visitors. At night the grounds were lighted by about 350 incandescent electric lights, inclosed in glasses of different colors.

The grounds and buildings were designed to be and were attractive in appearance, and were constantly kept in that condition. On the west side of the premises, and directly across Capitol avenue from the appellee's residence, were two entrances for vehicles, bicycles, and persons on foot, and on the east side were other entrances used by pedestrians. In May, 1897, after the premises had been so prepared and beautified, they were thrown open by the appellants to the public, and by advertisements and otherwise the public were invited to resort there to buy and drink intoxicating liquors and for amusement; and ever thereafter great crowds of people from all parts of the city and vicinity resorted to and congregated upon the premises, day and night, the greatest crowds being at night and on Sundays. At times more than 5,000 people visited the place in one day. Every night and every Sunday, in pleasant weather, there had been a constant stream of people, in carriages, on bicycles, and on foot, entering and departing. All the carriages, and a large number of bicycles and pedestrians, entered and departed through the entrance directly opposite appellee's residence. Many of the visitors remained there until after 12 o'clock at night and until the early hours of the morning. The appellants kept in their employ a band, which furnished music for the entertainment of visitors every evening, until late at night. The appellants sold intoxicating liquors without restraint and in violation of the law at all hours to the persons thus assembled on their premises, which were drunk thereon by such persons, and were served

by the glass at the tables upon the grounds and in the rooms of the buildings.    Prostitutes and their male associates frequented the premises, and many of the persons so assembled became intoxicated upon the liquors so sold, and while in such condition indulged in loud talking and profane and obscene language, and continued such conduct until late at night.    The persons entering and departing were noisy and disorderly, many of them shouting, laughing, and using profane and vile language.    All the things thus alleged to have been done on the premises were of daily and nightly occurrence during the warm weather, and also in cold weather, except that then there were smaller crowds, and the most of the things done were confined to the buildings.    The noises and disturbances which took place, and the singing and shouting, and vile and profane language, were plainly heard by the appellee and his family in their residence, and such noise and conduct of the persons on the premises, and of those entering and departing, were a constant disturbance and annoyance, offensive and disquieting to appellee and his family, and a damage to his enjoyment of his residence, and he and his family were kept awake at night, and kept in constant fear and dread of injury from drunken men.    The location, conduct, and manner of conducting the business and resort, the great numbers visiting it, the open and public violation of the law, in the sales of intoxicating liquors, the bad character of Tron, the wealth, influence, and determination of the other appellant in its business enterprises, its ownership of the real estate and interest in the establishment and maintenance of the business, the demoralizing influence of the business and resort, had become matters of public and general conversation and comments in the newspapers of the city and elsewhere throughout this State, and had given the place and business great notoriety throughout the city and State, and had caused disgrace and odium, and had given to the neighbor-

hood and locality of the business, including the appellee's residence, a bad reputation and character, and had created a prejudice against the same, and thereby had destroyed the rental value of the appellee's property for residence purposes and the enjoyment of the appellee in it as a homestead. It was further alleged that the appellants had recently erected and were using a building for theatrical exhibitions, which was situated on said premises immediately upon Capitol avenue, with an entrance on that street directly opposite the appellee's residence. This building included a stage and dressing-rooms, the place for the audience being enclosed in a tent. Performances were given there in the afternoon and evening of every day except Sunday, and it was alleged that the appellants intended to continue such daily performance during the entire summer. Large crowds attended the performances, and assembled in the tent and indulged in loud cheering and shouting. It was alleged that on account of all the things thus averred the appellee was damaged in the sum of $5,000; that appellants had invested large sums of money in the enterprise, and intended to maintain and enlarge it upon the same lines, to the irreparable injury of the appellee's property and his enjoyment thereof. Prayer for judgment for said amount, and that the appellants be enjoined from the further conduct of the business at that place.

The appellants answer separately by general denial. Appellant Tron also separately filed two paragraphs of answer, demurrers to which were sustained.

It is contended that the third paragraph of Tron's answer contained a good defense. In this paragraph it was alleged that prior to the commencement of this action the appellee and certain other persons entered into an agreement with the copartnership of Ritter & Baker, composed of Eli F. Ritter and Jason E. Baker, attorneys at law. This agreement was as follows: "We, the undersigned,

in consideration of mutual interests and protection of our homes, families,. and property, do hereby enter into the following agreement: (1) We will each institute a suit against the resorts known as 'Kissels' and 'Fairbanks,' situated in the immediate neighborhood of our homes, for damages and injunction as nuisances. We will concentrate our forces upon one case, to be pushed as rapidly as possible, for which trial we will carefully produce all the evidence we can secure, and give to such trial our careful attention; and if the plaintiff shall fail and be taxed with the costs of such trial, we hereby bind ourselves respectively to contribute each of us his proportion of such costs. If upon such trial the plaintiff is successful, then each of our cases is to be pressed for trial. In the event the plaintiff is defeated in said case first to be tried, then neither of us does hereby bind himself to go any further with the proceedings in the other cases, unless upon further consideration he shall decide to do so. (2) For the purposes of the suits referred to in this agreement, we do each hereby employ the firm of Ritter & Baker as attorneys, upon the following terms: Said firm to investigate and bring such suits and conduct the trial of said test case herein provided for, as well as the other cases if they shall proceed to trial, to do whatever may be necessary to be done as attorneys in the conduct of said cases to the final determination thereof, and if they shall fail to secure judgments and collect the same, then we and neither of us are to be in any way responsible to them for any fee or compensation for their said services; but if successful in obtaining judgments and collecting the same, the said firm is to have an amount equal to one-half of such sum as may be collected by them." This was dated March 26, 1898, and was signed by said attorneys and the appellee and five other persons. It was alleged in the third paragraph of answer that the place described in this agreement as a resort known as "Fairbanks" was the same place alleged in the complaint

to have been and to be conducted by the appellants; that pursuant to this agreement, and none other, the appellee brought this action by and through said Ritter & Baker as his attorneys.    After stating the purport of the terms of the agreement relating to compensation of the attorneys, it was alleged that it was contemplated in the minds of the parties to the contract that such amount to be paid to the attorneys should be paid out of the moneys actually recovered and collected in this action, and none other; that such contract was and is against public policy; and that this action, brought pursuant thereto, is speculative and champertous.

The parties to the contract having reduced its terms to writing, signed by them, thereby made it the expression of their intentions in the premises.    Not only were their oral negotiations merged in the written instrument, but also whatever was contemplated in their minds concerning the purposes of the parties to the contract was evidenced by the terms employed in the writing, by the legal effect of which, interpreted according to their ordinary signification, the purport of their contract must be ascertained.    As between themselves, they would not be permitted to say that they or either of them intended an effect different from the meaning of the words employed, nor can such a contrary effect be attributed to the contract by one not a party to the contract, and not alleging the making of any subsequent contract.    As to the proper effect of an allegation of fraudulent collusion in the framing of such a contract, the case presents no occasion for deciding.

The attorneys were engaged to bring and manage an action for each of the other parties for damages and for injunction.    None of the parties were to obtain or recover any part of the amount recovered as damages in any of the contemplated actions, except the plaintiff therein, the real party in interest, though all of them, except the attorneys, were interested in preventing by injunction the continued

maintenance of the nuisance. The attorneys were not to carry on the suit at their expense, and were not to be liable for the costs in any event. They were not to receive as their fee in each case a sum out of the damages recovered by the plaintiff or a share of such damages, but the plaintiff in each case was bound personally to the attorneys for an amount equal to one-half of the sum collected for such plaintiff. This was the ordinary and legitimate contingent fee. Each of those who engaged to share with the appellee in the payment of costs, if he should fail and should be taxed with the costs, had an interest of his own in the success of this suit, not by way of sharing in the damages recovered herein, but in the prevention by injunction of the continuance of the nuisance, and in the determination by the decision of the court of the questions which affected all such parties, respectively, in their several suits.

If the contract in question were obnoxious to the charge of champerty or maintenance, there would be a question as to whether it might properly be set up as a defense in this action, upon which question the authorities are not in full accord. We need not enter upon an investigation of the subject, for we are of the opinion that the contract is not thus objectionable. Any interest whatever in the subject of the action, though contingent and remote, or even the possibility of an interest, exempts one who aids the litigant from the charge of illegal maintenance. See 5 Am. & Eng. Ency. Law (2d ed.), 820.

An agreement to contribute to the expenses of litigation in which the person so agreeing is interested, or may reasonably suppose himself to be interested, by reason of having an interest in the question at issue, is not a champertous agreement or one subject to the charge of maintenance. *Davies* v. *Stowell,* 78 Wis. 334, 47 N. W. 370, 10 L. R. A. 190; *Gilbert-Arnold Land Co.* v. *O'Hare,* 93 Wis. 194, 67 N. W. 38; *Williams* v. *Fowle,* 132 Mass. 385.

The court upon the trial found in favor of the appellee;

that he was entitled to recover from the appellant Tron $200, "as damages for injuries to and interference with the comfortable enjoyment of the plaintiff's home and real estate, described in his complaint, by reason of the acts of the defendant William Tron therein complained of;" that the appellee was entitled to a perpetual injunction against Tron, enjoining him from the sale, directly or indirectly, of intoxicating liquors upon the grounds described in the complaint, and known as "Fairbanks," except in the room situate thereon and described in Tron's license as No. 2525 Capitol avenue north; that the appellant the Terre Haute Brewing Company be perpetually enjoined from permitting or suffering the real estate to be used for the sale of intoxicating liquor thereon, except in said room, and from leasing said ground for the purpose of such selling thereon except in said saloon room.    Judgment accordingly followed.

The separate motions of the appellants for a new trial were overruled, and the other questions presented here relate to matters stated as causes in those motions.

The finding of the court was sustained by sufficient evidence to support it on appeal, and was not contrary to law. There was evidence tending to support all the material averments necessary to the recovery awarded.    Comparing the complaint with the evidence, it may be said that the complaint stated the facts intensely, and perhaps with some degree of exaggeration, but that the evidence bore out the allegations with sufficient certainty on all the material matters.    Having taken space for the statement of the substance of the complaint, we need not recite the evidence, which was voluminous.    It showed that Tron maintained a public nuisance on the real estate leased to him for such purpose by his codefendant, which was specially injurious to the appellee, injuring and interfering with his comfortable enjoyment of his property as a home for himself and his family, for which special injury the damages were

assessed.  Such damages were so far within the province of the trial court that we can not disturb the finding because of the amount of damages awarded.  There has been some discussion of the method resorted to for the purpose of supplying intoxicating liquors to visitors on the grounds outside of the room to which the license for the sale of such liquors related, the license not protecting from the charge of unlawfulness sales of such liquors except in the licensed room.

The liquors were delivered to patrons at tables, of which there were about 100 in the grounds, by waiters, young men, some of them minors.  The waiters were supplied at the bar in the house with tickets or tokens, which were paid for by the waiters at such rate that they received tickets of a face value, in the payment for liquors, ten per cent. greater than the amount paid for them by the waiters. When liquors ordered by patrons were received by the waiter at the bar for delivery on the grounds, he gave in exchange therefor such tickets at their face value, being the price paid to the waiter by the patron; the waiter thus receiving compensation for his service for Tron out of the moneys received from the patrons by the waiter for the liquors sold.  If such sales on the grounds could properly be called sales by the waiters, and not by Tron, as seems to be claimed, they would still be unlawful sales, knowingly made possible and authorized and promoted by Tron, and he would be chargeable personally for his own unlawful sales at the bar to waiters who were minors.  This method of carrying on the establishment was a skilful device for security against dishonesty of the waiters, and for making payment for their services at the rate of ten cents for sales amounting to $1.10, and probably was used in part, if not wholly, for such purposes.  If it was supposed to operate also as an evasion of the law, it could only succeed as such with those who were blind to the requirements of the law.

It would not be complimentary to the worldly wisdom of the courts to expect them to be cheated by such a device.

But, without regard to the question as to the persons who made sales in themselves unlawful, the establishment was carried on by Tron in such manner as to constitute a public nuisance specially injurious to the residents of the neighborhood. It was necessary and proper to enjoin the prosecution of this unlawful method of carrying on the business on the grounds outside of the licensed room, in order to terminate the disturbances and annoyances to which the law-abiding neighbors were unlawfully subjected. The injunctive relief granted did not go to the extent authorized by the decisions in *Haggart* v. *Stehlin,* 137 Ind. 43, 22 L. R. A. 577, and *Kissel* v. *Lewis,* 156 Ind. 233.

There has been discussion before us of the action of the court in sustaining and in overruling objections in the examination of witnesses on the trial. We have carefully considered these matters, and conclude that there was no available error in any of them, and this is so clearly true that no general interest would be subserved by using the considerable space which would be necessary to discuss these various rulings.

Judgment affirmed.