## WORRELL v. ROXANA PETROLEUM CORPORATION.

No. 19436. Opinion Filed June 24, 1930.

Rehearing Denied Sept. 16, 1930.

Commissioners' Opinion, Division No. 2.

Melton & Melton and Bond & Bond, for plaintiff in error.

Koerner, Fahey & Young and Wilkinson & Wilkinson, for defendant in error.

HALL, C. This is an action by the Roxana Petroleum Corporation against C. C. Worrell, to recover one-half of the proceeds of a certain judgment which Worrell had obtained and in which the Roxana Petroleum Corporation was primarily interested. The suit was on a contract between it and Worrell, whereby Worrell, for a good and valuable consideration, agreed to apportion one-half of the proceeds of the judgment to the plaintiff.

The history of the controversy is somewhat novel. In fact, it is as much befitting a plot for a thrilling book on human intrigue and fraud-complex as it is a proper subject for the courts.

In July, 1920, Worrell, the defendant (and plaintiff in error herein), executed an oil lease to the Roxana Petroleum Corporation. One Burr and one Bollong were the brokers handling the lease; the lease, with the consent of Worrell, the lessor, and the Roxana Petroleum Corporation, the lessee, was placed in escrow with the First National Bank of Duncan. Worrell instructed the said bank and the brokers to deliver this lease to this oil company upon the payment of $8,000. Immediately thereafter, these brokers and the bank informed this oil company in a very convincing manner that Worrell would not take less than $11,000 for the lease. A little while later, this oil company paid to the bank the sum of $11,000 and instructed that it be paid to Worrell's order. The company at this time received the lease. This was unknown to Worrell, and both he and the oil company later discovered that he had received $3,000 less than the oil company had paid for the lease. That is, Worrell got $3,000 less than he might have gotten for the lease, and the Roxana Petroleum Corporation had paid $3,000 more than it was necessary to pay to obtain the lease. On this theory—that the oil company was entitled to this $3,000, or that Worrell was entitled to it—Worrell and the oil company came to an understanding and entered into an agreement whereby, instead of the oil company suing the bank, the escrow-holder,

for actual fraud, Worrell was to sue and did sue the bank and brokers for money had and received. Worrell became the plaintiff in the action. The Roxana Petroleum Corporation furnished the attorneys and financed the litigation, and each was to share one-half in the judgment recovered. Worrell obtained judgment against these brokers and the bank for the sum of $3,000, together with interest. The case was appealed to this court under the style of First National Bank of Duncan v. C. C. Worrell, 106 Okla. 184, 233 Pac. 755. The judgment was affirmed. Worrell, the defendant in this action, collected the money and kept it. At least, he refused to pay any of it to the plaintiff. This action was to recover one-half of the judgment and interest collected, which was the sum of $1,894.55.

Before the original action by Worrell against the brokers and the bank was commenced, Worrell addressed the following letter to the Roxana Petroleum Corporation, the plaintiff in this action:

"Confirming our verbal understanding in regards to controversy between the brokers, Messrs. Burr and Bollong, and myself, will say this is authority to bring suit in my behalf to recover as much as possible. It is understood the Roxana Petroleum Corporation is to bear all expenses, including attorneys' fees and court costs. It is understood between the Roxana and myself that whatever money recovered, either before or after suit is filed, is to be divided 50 per cent. Roxana and 50 per cent. to the writer."

At a later date he wrote another letter containing, among other things, this language:

"I feel your attorneys should, if they can, put Burr and Bollong out of business there in Duncan: * * * besides it is too bad to allow these fellows to go on beating good honest oil firms and people out of their money that really belongs to them."

After the case had gone the route of the district court and the Supreme Court, and had returned, and after the Roxana company had become suspicious of Worrell, it requested Worrell and the First National Bank of Duncan to make payment of one-half the judgment directly to it. Business of that sort was entirely unsatisfactory to Worrell, and he replied to the Roxana Company in a letter containing the following language:

"I am solvent and remember my agreement in this matter, and when same has been paid in, will send exchange for Roxana's share, but will not join in a request to have First National Bank of Duncan to send it."

These letters were attached to the petition in this case as exhibits. In fact, the

petition sets out the entire history of the controversy, and the foundation of the cause of action rests upon the entire controversy which includes these express agreements on behalf of Worrell to pay the Roxana Company, the plaintiff herein, one-half the proceeds of this judgment.

At the trial, defendant did not introduce any evidence, but rested his case with a demurrer to the evidence of plaintiff. The court instructed the jury to return a verdict in favor of plaintiff. Proper exceptions were taken, and an appeal from the judgment was lodged in this court.

The only question for determination here is whether or not the agreement between the Roxana Petroleum Corporation and Worrell, whereby the Roxana Company was to furnish the attorneys and finance the lawsuit and share in the proceeds of the judgment, was a champertous agreement. The defendant (plaintiff in error) contends that the agreement was champterous. The plaintiff insists with equal confidence that the agreement was not champertous. The question is a new one in this state, but the subject is by no means new in this country. The governing rule fully sustained by the authorities from a great number of jurisdiction, is stated in 11 C. J. 250, as follows:

"Where a person promoting the suit of another has any interest whatever, legal or equitable, in the thing demanded, distinct from that which he may acquire by an agreement with the suitor, he is, in effect, also a suitor according to the nature and extent of his interest. It is accordingly a principle that any interest whatever in the subject-matter of the suit is sufficient to exempt the party giving aid to the suitor from the charge of illegal maintenance. Whether this interest is great or small, vested or contingent, certain or uncertain, it affords a just reason to the party who has such an interest to participate in the suit of another. However, this interest must have existed or been acquired in some way other than through the contract containing the champertous agreement. It is the aiding of a litigation by a stranger having no interest, direct or remote, immediate or contingent, on an agreement with the party in interest, whereupon such stranger is to receive a part of the thing in dispute, that the law prohibits."

The gist of the offense or act of champerty and maintenance is an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it. If there is no officious intermeddling; that is, if the person furnishing money or anything of value or assistance in the prosecution of a suit, is interested in the litigation directly or indirectly, or remotely, or if he may reasonably suppose himself to be interested, his conduct is not champertous. The Indiana Court of Appeals, in the case of Tron v. Lewis, 31 Ind. App. 178, 66 N. E. 490, on this point held that:

"An agreement to contribute to the expenses of litigation in which the person so agreeing is interested, or may reasonably suppose himself to be interested by reason of having an interest in the question at issue, is not a champertous agreement or one subject to the charge of maintenance." (Citing numerous cases.)

In the case of McCall's Adm'r v. Capehart, 20 Ala. 521, speaking on the point at issue, the court said:

"The doctrine of the common law as to maintenance does not apply to persons who either have any legal interest in the suit promoted by them, or who act under a bona fide belief that they have."

In Gillman, Son & Co. v. Jones, 87 Ala. 691, 5 South. 785, it was held that a contract for the sale of bonds of an insolvent railroad whose assets were being administered, was not champertous, although the purchaser was not a party to the suit, but assumed the payment of the costs and expenses incurred in the future litigation respecting the bonds. it appearing that he was largely interested in another intersecting railroad and was endeavoring to effect for it a lease on a part of the road of the insolvent corporation.

The opinion in the case by Justice Somerville is a masterpiece. The learned jurist, after fully discussing the various definitions of champerty and maintenance and their history down through the common law and modern law of England, and of the American states, said:

"The peculiar state of society, out of which such a law grew, carried it to the most absurd extremes. Men were held indictable for aiding a litigant to find a lawyer; for giving friendly advice to a neighbor as to his legal rights; for lending money to a friend, to vindicate his known legal rights; for offering voluntarily to testify in a pending suit, and other like offices of charity and friendship. 3 Amer. & Eng. Encyc. Law, 71. It is not surprising, therefore, that the law on this subject has gradually undergone a great change, which is recognized universally by jurists, judges and law-writers everywhere. This change has been called for by the new conditions of modern society, considered in its varied relations. commercial, political, and sociological. In many of its phases, it has been, both in America and England, emphatically discarded, as 'inapplicable to the present

condition of society, and obsolete.' Sedgwick v. Stanton, 14 N. Y. 289, 296; Master v. Miller, 4 Term. R. 320; Thallhimer v. Brinckerhoff; 3 Cow. 623, s. c., 15 Am. Dec. 308; Richardson v. Rowland, 40 Conn. 565; 2 Whart. Cr. L. (8th Ed.) sec. 1854, note. It is accordingly asserted, on high English authority, that no one has been punished criminally for the offense of maintenance or champerty within the memory of living man. 3 Steph. Crim. Law, 234. Public opinion in England has advanced so far on this subject, that the Criminal Law Commissioners many years ago recommended very earnestly that the offenses of maintenance and champerty be abolished, observing of them, that they 'are relics of an age when courts of justice were liable to intimidation by the rich and powerful and their dependents.' Steph. Dig. Crim. Law, note 8.

"There is much reason, it thus seems, for the relaxation of the doctrines pertaining to the subject, so that they may be adapted to the new order of things in the present highly progressive and commercial age. Necessity and justice have, accordingly, forced the establishment of recognized exceptions to the doctrine of these offenses. Among these may be enumerated the following instances: Relationship by blood or marriage will often now justify parties in giving each other assistance in lawsuits; and the relation of attorney and client; or the extension of charitable aid to the poor and oppressed litigant; and especially is an interference in a lawsuit excusable, when it is by one who has, or honestly believes he has, a valuable interest in its prosecution."

The above case was rendered in 1888, and it has been many times quoted by the highest courts in this country. This case was given special consideration and approval by the Supreme Court of North Carolina in the case of Smith v. Hartsell, 150 N. C. 71, 63 S. E. 172, 22 L. R. A. (N. S.) 203. This North Carolina case contains a comprehensive review of the authorities on the subject, clearly showing that all the modern authorities are to the effect that an agreement will not be held within the condemnation of the principle of champerty or maintenance unless the interference is clearly officious and for the purpose of "stirring up strife and continuing litigation." In that case it was held that an agreement by one having a claim against the decedent's estate to do everything proper and legitimate to aid the heirs in recovering the estate, in consideration that they pay his claim, was not void on the ground of champerty or maintenance.

In the case of Hotmire v. O'Brien, 44 Ind. App. 694, 90 N. E. 33, it was held not to be a champertous agreement where a contract was made between two creditors of the same debtor to sue to set aside a conveyance between debtors as fraudulent, each to pay one-half of the expense and to divide equally the amount collected. On this point, the court said:

"Where a party has an interest, direct or remote, immediate or contingent, existing at the same time the suit is commenced, the right of such party to assist in maintaining of such suit exists and may be exercised."

In Davis v. Stowell, 78 Wis. 334, it was held that where several persons have been induced, on the same representations, to buy stock from the defendants, it is not maintenance for them to contribute to the expense of a suit by one of them to recover the money paid by him, as they all have a common interest in settling the question as to the defendant's liability.

The evidence in this case is that the brokers and the bank, with whom the lease was deposited, informed the Roxana Petroleum Corporation that Worrell would not take less than $11,000 for the lease. Attorneys for plaintiff in error evidently have overlooked the fact that the bank was the agent of the Roxana Petroleum Corporation as well as for Worrell, and that the Roxana Company could have sued the bank for fraud, and established its cause of action; but, as an expedient, it permitted Worrell, the defendant herein, to sue to recover the amount which these parties obtained by fraud, and agreed to divide the proceeds of the recovery with Worrell, also one of the victims of the intrigue.

It follows, or should follow from the facts herein set forth and the authorities cited, that the contentions of plaintiff in error are without merit. Learned counsel for plaintiff in error urge, with considerable seriousness, that to permit the defendant in error in this action to recover would be shocking to the sense of morals; this is said, of course, upon the theory that the contract between the plaintiff and defendant is champterous. In the face of the undisputed facts in this case, which show that the Roxana Company was victimized by these brokers and the bank in the sum of $3,000, and then after this victimized company had successfully prosecuted a suit to final judgment in the Supreme Court of this state, upon an agreement that the victimized parties, plaintiff and defendant in this action, should share equally in the proceeds when the outlay of the defendant was that he lent his name only to the litigation; and in the face of his solemn agreement and these facts, he collects the judgment and hides it away from, at least, his companion in battle, we are constrained to say that he is in an awkward position in attempting to sound the warning against

offending the morals recognized by the law of contracts.

Finding no error in the record, the judgment of the trial court is hereby affirmed.

BENNETT, HERR, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.