**Dianne NIEMEYER, Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.**

No. 69092.

Supreme Court of Oklahoma.

April 3, 1990.

John Michael Johnston, Claro & Johnston, Oklahoma City, for appellant.

Donald R. Wilson, Fenton, Fenton, Smith, Reneau & Moon, James L. Percival,

Derryberry, Quigley, Parrish & Solomon, Oklahoma City, for appellee.

KAUGER, Justice.

This case involves an alleged tortious interference by United States Fidelity & Guaranty Company, USF & G, appellee, with an insurance contract between the appellant, Dianne Niemeyer and her uninsured/underinsured motorist carrier, American General Fire and Casualty Co. The trial court granted USF & G's motion to dismiss after finding that Niemeyer's petition failed to state a cause of action. We granted certiorari to address two first impression questions: 1) whether under the 1984 Pleading Code, 12 O.S.Supp.1984 § 2001 et seq., a plaintiff must specifically plead that a third party tortiously participated in an "unjustified, non-privileged or unexcused interference" with the contract in order to state a cause of action for tortious interference, or if general allegations are sufficient; and 2) whether USF & G had a legal duty to inform American General, the uninsured/underinsured motorist carrier, of its investigation. We find that: 1) the petition stated a claim for tortious interference with contract; and 2) USF & G did not have a legal duty to report its investigative findings to American General.

FACTS

Dianne Niemeyer's daughter was killed when the car in which she was riding was involved in a one car accident. Because the driver's car was insured by USF & G, the appellant/mother/Niemeyer began negotiations with USF & G and with her underinsured motorist carrier, American General Fire and Casualty Company. On December 1, 1986, USF & G tendered its policy limits—$50,000.00. Although American General's uninsured/underinsured policy

contained a $200,000 limit, it offered $1,000.00 to settle the claim, refusing to negotiate further. After Niemeyer filed suit against American General to enforce the policy provisions, she discovered that American General's refusal to negotiate was premised on false, derogatory information supplied by USF & G. Shortly thereafter, American General settled with the appellant, and it paid the full limits of the policy. Niemeyer accepted USF & G's offer on February 6, 1987.

On February 24, 1987, Niemeyer brought an action for tortious interference with contract. She alleged that because of the falsehoods furnished to American General by USF & G, her underinsured carrier had offered only $1,000 to settle the claim. USF & G admitted that it gave its file to American General, and it does not dispute Niemeyer's assertion that the information contained in the file was untrue. Nevertheless, USF & G filed a motion to dismiss asserting 36 O.S.1981 § 3636 required it to share sensitive information with the "excess" carrier. The trial court granted the motion to dismiss for failure to state a claim, apparently ruling as a matter of law, that USF & G was incapable of interfering with the contract. The Court of Appeals affirmed the trial court after finding that the appellant's pleadings were insufficient to state a claim because she had failed to plead that USF & G's interference was not "justified, privileged or excused". Niemeyer petitioned for certiorari, and USF & G requested oral argument. We granted certiorari on September 25, 1989.

1. *Del State Bank v. Salmon,* 548 P.2d 1024, 1027–28 (Okla.1976); *Crystal Gas Co. v. Oklahoma Natural Gas Co.,* 529 P.2d 987, 989 (Okla. 1974); *National Life & Accident Ins. Co. v. Wallace,* 162 Okla. 174, 21 P.2d 492, 494 (1933).

2. *Schonwald v. Ragains,* 32 Okla. 223, 122 P. 203, 208 (1912).

3. The petition alleged that USF & G tortiously interfered with the underinsured motorist contract entered into by the mother and American General by: 1) advising American General that the claim was not worth $50,000.00; 2) furnishing American General with photographs and documents; 3) relating unsubstantiated rumors

## I.

## THE PETITION ADEQUATELY STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT UNDER THE OKLAHOMA PLEADING CODE.

██ The law recognizes the right to transact one's lawful business without unjustified interference. Any malicious interference with such business is an unlawful act and an actionable wrong.[1] An action for tortious interference of contract arises when one maliciously interferes in a contract between two parties inducing one of them to break the contract to the detriment of the other.[2] USF & G, relying on *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 427–28 (Okla. 1979), asserts that Niemeyer failed to plead specific facts demonstrating that the dissemination of false information was not "justified, privileged or excused". Niemeyer maintains that under liberal pleading rules, her petition is sufficient to state a cause of action.[3]

██ Niemeyer alleged in her petition that USF & G had tortiously interfered with her underinsured motorist contract to her detriment. The Oklahoma Pleading Code, 12 O.S.Supp.1984 § 2001, et seq., does not require a plaintiff to set out in detail the facts upon which the claim is based. Notice pleading under the Code merely requires "a short and plain statement of the claim" which will give the defendant fair notice of the plaintiff's claim

and gossip to American General which it used as a basis for its $1,000.00 settlement offer. It is alleged that it was necessary to file suit in federal court in order to obtain a fair settlement for her daughter's death. She further alleged that during this court action, American General admitted that it did not have a factual basis for the rumors and gossip which had been provided by an employee of USF & G's. As the direct result of USF & G's interference with her contract, the mother alleged that she had expended unnecessary and substantial attorney fees and that she had suffered emotional distress as a result of USF & G's actions.

and the grounds upon which it rests.[4] [See the appendix of forms, 12 O.S.Supp.1984 §§ 2026, 2027.] Title 12 O.S.Supp.1984 § 2008(F) provides that pleadings shall be construed to do substantial justice.[5] In assessing the sufficiency of the petition, the general rule is that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief.[6] With the exception of fraud, mistake, denial of performance, and special damages,[7] Oklahoma no longer requires strict compliance with terms of art and legal phraseology when pleading a cause of action.

Ten years before the 1984 Pleading Code was adopted, we held in *Crystal Gas Co. v. Oklahoma Natural Gas Co.,* 529 P.2d 987, 990 (Okla.1974), a case in which the plaintiff sought to recover damages for interference with contractual and business relations, that the plaintiff must prove that the defendant's wrongful acts were the proximate cause of the plaintiff's injury. However, we recognized that the plaintiff could plead causation in general terms. Obviously, there is a difference between the burden of proof in a claim for tortious interference with contract, and with what is necessary to allege its commission.[8] The archaic rules of code pleading have been replaced

by the 1984 Code of Civil Procedure, thus placing the spirit of the law above strict compliance with the letter of the law.[9] Based on these statutory provisions, we find that the petition states a claim for a tortious interference with a contract.

## II.

## USF & G DID NOT HAVE A LEGAL DUTY TO ADVISE A THIRD PARTY CLAIMANT'S UNDERINSURED MOTORIST CARRIER OF ITS INVESTIGATION.

USF & G asserts that American General's uninsured motorist coverage is excess to the underinsured motorist's liability coverage because it is not affected until such time as the tortfeasor becomes underinsured. USF & G contends that, in essence, it is the primary carrier, and that it is bound by 36 O.S.1981 § 3636 to keep the excess carrier advised of its investigation. USF & G argues that failure to do so would subject it to a bad faith action by American General for failure to negotiate a settlement.

■ Excess coverage comes into play only after any primary coverage has been exhausted.[10] Although the record does not contain the insurance policies, § 3636 provides that the policy shall provide coverage

---

**4.** Title 12 O.S.Supp.1984 § 2008 provides in pertinent part:
"A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:
1. A short and plain statement of the claim showing that the pleader is entitled to relief;
..."

**5.** Title 12 O.S.Supp.1984 § 2008(F) provides:
"F. CONSTRUCTION OF PLEADINGS. All pleadings shall be construed as to do substantial justice."

**6.** *Valley Vista Dev. Corp. v. City of Broken Arrow,* 766 P.2d 344, 348 (Okla.1988); *Buckner v. General Motors Corp.,* 760 P.2d 803, 812 (Okla. 1988).

**7.** Title 12 O.S.Supp.1987 § 2009 provides in pertinent part:
"... B. ... In all averments of fraud or mistake, the circumstances constituting fraud

or mistake shall be stated with particularity....
C. ... A denial of performance or occurrence shall be made specifically and with particularity....
G. ... When items of special damage are claimed, their nature shall be specifically stated...."

**8.** See also, *Sharrow v. State Farm Mut. Auto. Ins. Co.,* 306 Md. 754, 511 A.2d 492, 500 (1986).

**9.** See also, *State Medical Oxygen & Supply, Inc. v. American Medical Oxygen Co.,* 230 Mont. 456, 750 P.2d 1085, 1089 (1988).

**10.** *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 747 P.2d 947, 954 (Okla.1987).

therein, or supplemental thereto, for the protection of persons insured by owners of either uninsured or underinsured motor vehicles.[11] If the tortfeasor is underinsured, the uninsured motorist policy pays any damages not covered by the primary policy up to the uninsured policy limits. Even if the underinsured motorist coverage is excess coverage as asserted by USF & G, we cannot agree with its conclusion that USF & G owed a duty to American General as excess carrier.

The situations in which an excess carrier has been allowed to sue a primary carrier have occurred when the primary carrier has failed to settle a claim in good faith with a *mutual* insured. This is based on the rationale that an insurance carrier has the duty to use the utmost good faith in the disposition of claims made against its insured. Under the theory of equitable subrogation, the duty has been extended to the excess insurer.[12] Here, the insurance carriers do not share the same insured. USF & G insured the owner of the car, and Niemeyer's daughter was a passenger at the time of the accident. Niemeyer was American General's insured and a third party claimant to USF & G's coverage.

■ Because, Niemeyer is a third party claimant, she could not bring a bad faith action against USF & G. We reached this conclusion in *Allstate Ins. Co. v. Amick*, 680 P.2d 362, 365 (Okla.1984). The *Amick* Court held that in the absence of a contractual or statutory relationship, there is no duty to settle a claim in good faith,[13] and that because third party claimants (as distinguished from third party beneficiaries) are strangers to the insurance contract, they cannot bring a bad faith action.

The *Amick* principle applies here because: 1) there is no contract between American General and USF & G; 2) Niemeyer is not a third party beneficiary; 3) if subrogation were allowed, American General would stand in the same shoes as Niemeyer, and it would be subject to the defense that a third party claimant cannot bring a bad faith action;[14] and 4) there was no statutory duty under the applicable version of § 3636(E) because the 1981 statute specifically provided that any payment made by the insured tort-feasor would not reduce or be credited against the total liability limits of the insured's uninsured motorist coverage.[15]

## CONCLUSION

This cause comes to us from an appeal by Niemeyer after the trial court sustained

---

**11.** Title 36 O.S.1981 § 3636(B) provides in pertinent part:

"(B) The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run vehicles because of bodily injury, ..."

This statute was amended in 1989, however, this language remains unchanged.

**12.** *Valentine v. Aetna Ins. Co.*, 564 F.2d 292, 296–97 (9th Cir.1977); *United States Fidelity & Guar. Co. v. Tri–State Ins. Co.*, 285 F.2d 579, 581 (10th Cir.1960); *Argonaut Ins. Co. v. Hartford Accident and Indem. Ins. Co.*, 687 F.Supp. 911, 914 (S.D.N.Y.1988); *Insurance Co. v. Medical Protective Co.*, 570 F.Supp. 964, 972 (D.Kan. 1983); *Jones v. Morrison*, 284 F.Supp. 1016, 1019 (W.D.Ark.1968); *Continental Casualty Co. v. Reserve Ins. Co.*, 307 Minn. 5, 238 N.W.2d 862, 864 (1976). See also Annot., "Excess Carrier's Right to Maintain Action Against Primary Liability Insurer for Wrongful Failure to Settle Claim against Insured," 10 A.L.R.4th 879 (1981) for further citations.

**13.** *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 161 (Okla.1989); *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 911–12 (Okla.1982).

**14.** *Moore v. White*, 603 P.2d 1119, 1121 (Okla. 1979).

**15.** Title 36 O.S.1981 § 3636(E) provided in pertinent part:

"(E) ... Provided, however, with respect to payments made by reason of the coverage described in subsection (C) above, ... that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage."

This section was amended in 1989 and now provides in pertinent part:

"(E) ... Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section ... that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage. Provided further, that if a tentative agreement to settle for liability limits has been reached

USF & G's motion to dismiss for failure to state a claim. USF & G argued in its answer brief on appeal and on certiorari that it could properly share its claim file with American General because the file was a protected, privileged communication pursuant to 12 O.S.1981 § 1443.1.[16] Because of the posture of the case, this defensive argument was not raised in the trial court, and we need not decide a question which is raised for the first time on appeal.[17] We find that the petition stated a claim for tortious interference with contract, and that USF & G did not have a legal duty to report its investigative findings to American General.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; MOTION FOR ORAL ARGUMENT DENIED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.

HARGRAVE, C.J., and LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, V.C.J., and HODGES and SIMMS, JJ., dissent.

SIMMS, Justice, dissenting.

I respectfully dissent. Plaintiff Niemeyer has not stated a claim against USF & G for tortious interference with the contract between herself and American General, her uninsured motorist carrier. I agree with the Court of Appeals that the petition was insufficient to state a claim for which relief could be granted, and I believe that the substance of the purported action suffers from underlying defects as well.

The elements of an action for tortious interference with a contract are not present here. That action arises when a third person maliciously interferes in a contract between two parties, inducing one of them to breach the contract to the detriment of the other. The plaintiff in such an action must also show that the damage was proximately sustained as a result of the interference. "Malice" in this context means a wrongful act, done intentionally and without just cause or excuse. *Schonwald v. Ragains*, 32 Okl. 223, 122 P. 203 (1912); *Stebbins v. Edwards*, 101 Okl. 188, 224 P. 714 (1924); *Crystal Gas Company v. Oklahoma Natural Gas Company*, Okl., 529 P.2d 987 (1974); *Del State Bank v. Salmon*, Okl., 548 P.2d 1024 (1976); *Mac Adjustment, Inc. v. Property Loss Research*, Okl., 595 P.2d 427 (1979).

Here there was no malicious interference. There was no breach of contract. The contract was fully performed and plaintiff recovered the policy limits. There were no damages. Plaintiff has fully recovered on her contractual remedies and is attempting to obtain a double recovery.

---

with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured.... ...2. ... Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage...."

16. Title 12 O.S.1981 § 1443.1 provides:
"A. A privileged publication or communication is one made:
First. In any legislative or judicial proceeding or any other proceeding authorized by law;

Second. In the proper discharge of an official duty;
Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.
B. No publication which under this section would be privileged shall be punishable as libel."

17. *Mothershed v. Mothershed*, 701 P.2d 405, 411 (Okla.1985); *Stillwater Indus. Found., Inc. v. State Bd.*, 541 P.2d 173, 178 (Okla.1975).

The communications between USF & G and American General were absolutely privileged. They were directly related to a potential lawsuit in which USF & G and American General would be co-defendants. Ms. Niemeyer had made claims against both defendants and the communications were made during the investigation and evaluation process by the insurers. Suit was in fact subsequently filed against American General. As with any potential co-defendants with a common interest in investigating, evaluating and defending claims against them, communications between these insureds were privileged by virtue of 12 O.S.1981, § 1443.1, and case law thereunder. See e.g., *Hammett v. Hunter*, 189 Okl. 455, 117 P.2d 511 (1941). USF & G was protected from suits resting on these alleged libelous factual underpinnings.

Other courts have extended the absolute privilege from communications made during legal proceedings, to events outside the courtroom and steps prior to trial. See, *Hoover v. Van Stone*, 540 F.Supp. 1118 (D.C.Del.1982); *Lerette v. Dean Witter Org., Inc.*, 60 Cal.App.3d 573, 131 Cal.Rptr. 592 (1976). This Court recently expanded the absolute privilege to communications made before legal proceedings are begun. In *Kirschstein v. Haynes*, Okl., 788 P.2d 941 (1990), we adopted the Restatement view and extended the statutory privilege for attorneys, parties and witnesses to communications made before actual proceedings are begun. The facts in *Kirschstein* were more extreme than those presented here, as no actual judicial proceeding was ever initiated there.

The trial court did not specify the reasons for its dismissal of Niemeyer's action. In affirming that dismissal, the Court of Appeals correctly held that plaintiff's petition failed to state a claim for which relief could be granted as plaintiff did not allege that defendant's interference was not justified, privileged or excused. An improper motive, a wrongful action without justification or privilege, is an essential part of the plaintiff's cause of action which must be pleaded and proved. See e.g., *Mac Adjustment*, supra.

While it is true that the new Pleading Code does not require that detailed facts be set out or that terms of art and legal phraseology be used when pleading a cause of action, it is necessary for plaintiff to show a right to relief. In *The Petition Under the New Pleading Code*, 38 Okl.L. Rev. 245, 246, 256 (1985), Professor Fraser states that under the new Code, "a plaintiff must show a right to relief rather than state facts sufficient to constitute a cause of action. A petition fails to show a right to relief where it fails to show either specifically or by implication all the essential elements of the plaintiff's claim ..." A petition "should disclose the existence of the necessary elements of a legally recognized claim or cause of action." Professor Fraser, relying on *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), noted that a petition must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, or allegations from which an inference fairly may be drawn that there will be evidence on these material points.

The majority's decision allows Ms. Niemeyer to pursue a double recovery. She has already fully recovered under her insurance contract with American General. There was **NO BREACH** of that contract. She received the full policy limits of $200,000.00 in settlement. Her petition states that she brings this action to recover damages from USF & G because, as a result of defendant's alleged interference, plaintiff was:

> "[C]ompelled to file a federal court action in order to obtain a fair and reasonable settlement ... [and] therefore expended substantial attorneys fees which should not have been necessary and also suffered emotional anxiety and distress as a direct and proximate result of the Defendant's actions."

For this, plaintiff prayed for a judgment for "One Hundred and Thirty Thousand

Dollars for her actual damages ... and Three Per Cent (3%) of the net worth of USF & G for punitive damages."

I am not aware of any decision from any jurisdiction which allows a plaintiff who recovered full contract damages to then pursue a recovery such as this for malicious interference with a contract from a third party. The majority presents no authority in support of this resolution.

Concerning this issue, it is stated in Harper & James (Harper, James and Gray, Law of Torts, 2nd Ed.) that the action for intentionally inducing a breach of contract is "an alternative to recovery against a third person for the breach", (§ 6.5, at page 302). It has been held that a judgment on the contract action is res judicata on the other action. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956); *Moreno v. Marbil Production Inc.*, 296 F.2d 543 (2nd Cir.1961).

I would affirm the trial court's dismissal of this action.