**TEMERON, INC., Appellant,**

v.

**FERRARO ENERGY CORPORATION and Northern Natural Gas Company, a division of Enron Corporation, Appellees.**

No. 79431.

Court of Appeals of Oklahoma, Division No. 3.

May 11, 1993.

Rehearings Denied June 29, 1993.

Certiorari Denied Sept. 22, 1993.

William E. Hughes, Tulsa, for appellant.

Joseph P. Titterington, Oklahoma City, for appellee Northern Natural Gas Co.

R. Lyle Clemens, Oklahoma City, for appellee Ferraro Energy Corp.

## MEMORANDUM OPINION

HANSEN, Chief Judge:

Appellant, Temeron, Inc., (Temeron), seeks review of the trial court's order which sustained Appellee Ferraro Energy Corporation's, (FEC), motion for summary judgment. The order similarly sustained Appellee, Northern Natural Gas Company's, (Northern), motion to dismiss. Temeron brought this action against Appellees, alleging breach of contract against FEC and against Northern for its intentional interference with Temeron's contract. The facts presented to the trial court are these.

On or about August 1, 1986, Temeron and FEC entered into a consulting service agreement wherein Temeron agreed to review FEC's gas purchase contracts to determine whether FEC was receiving all monies to which it might be entitled under the contracts. The agreement provides in part:

1. Services to be provided:

 A. Consultant [Temeron] will schedule and conduct a preliminary review of Producers [FEC] contracts to determine if it appears that a full review may disclose underpayments to Producer. There will be no charge to producer for such service. All work papers, notes, etc. created during such review shall remain the sole property of Consultant.

B. If Producer determines that it would benefit from a full review, Consultant will schedule such examination upon notification from Producer and the execution of this Agreement.

2. Assignment of Claim(s):

A. Producer hereby grants Consultant the option to take an assignment of any and all claim(s) identified by Consultant. If Consultant elects to take assignment of a claim on its own account it will pay Producer fifty percent (50%) of any amount it receives from any settlement and/or litigation. Such amounts are due to Producer within thirty (30) days of the receipt thereof by Consultant. Consultant will have full and total authority to accept the terms of any settlement that it deems appropriate. Consultant may require Producer to enter a separate assignment to document Consultant's ownership of the claim(s). Producer further agrees to cooperate with Consultant in executing any documents reasonably required by Consultant to commence, continue or finalize any settlement and/or litigation. Additionally, Producer will furnish any and all witnesses and documents required by Consultant without subpoena as deemed necessary by Consultant in pursuing any claim assigned pursuant to this Agreement. Consultant will assume all costs associated with such negotiations and/or litigation and hold Producer harmless therefrom. Any payment to Producer shall be reduced pro rata by all unrecovered expenses and attorney's fees incurred in pursuing and collecting the claim.

\* \* \* \* \* \*

8. Term:

This Agreement shall become effective from the date set forth above, and shall continue in effect for a period of four(4) years and on a month-to-month basis thereafter until the parties hereto have accomplished the purpose for entering into this Agreement.

Pursuant to this agreement, Temeron examined FEC's records and determined Northern owed FEC several million dollars under their gas purchase contract, a fact unknown to FEC until Temeron examined the records. With FEC's approval, Temeron instituted legal action against Northern in FEC's name, Cause No. 87–01248 (hereinafter *"Ferraro v. Enron"*), to recover monies due FEC under its gas purchase contract with Northern. FEC and Northern began settlement negotiations without involving Temeron. Temeron maintains the evidence shows Northern would not settle with FEC unless Temeron was excluded from the settlement. FEC thereafter terminated Temeron's services under the consulting agreement. After FEC terminated Temeron's services, Temeron attempted to intervene in *Ferraro v. Enron.* FEC, but not Northern, opposed Temeron's intervention and the trial court denied the motion. FEC appealed the denial of intervention but subsequently dismissed the appeal after FEC and Northern settled the action for two million dollars. Temeron has received no compensation for its work under the consulting agreement.

FEC's motion for summary judgement was predicated on two grounds: first, that Temeron is precluded from litigating this action because it is barred by the doctrines of res judicata and collateral estoppel by virtue of the denial of intervention in *Ferraro v. Enron* and second, because Temeron may not recover damages on quasi-contract for services it rendered in the hopes of gaining a business advantage. We will address the issues raised in the motion for summary judgment and then address the issues raised in Northern's motion to dismiss.

■ Because Temeron dismissed its appeal of the denial of the motion to intervene and such denial has become final, Temeron may not now attack the propriety of that order. All that is in issue here is whether Temeron is precluded from maintaining this action against FEC based on the denial of intervention. Appellant sought intervention pursuant to 12 O.S. 1991, § 2024. It is unclear from a review of the pleadings on the motions to inter-

vene whether Temeron sought permissive intervention or intervention as of right. Both FEC and Temeron agreed the trial court's first order denying intervention was based on Temeron's failure to present evidence that Temeron had received an assignment from FEC of FEC's claims against Northern. In its denial of Temeron's renewed motion to intervene, the trial court stated simply "There is no evidence of a written agreement."

■ The doctrine of res judicata, or claim preclusion, operates to bar relitigation by the parties or their privies of issues which were or could have been litigated in an action which resulted in a final judgment on the merits. *Erwin v. Frazier*, 786 P.2d 61, 64 (Okla.1989). A judgment on the merits is one that disposes of the real or substantial grounds of action or defense as distinguished from matters of practice, procedure or form. *Points v. Oklahoma Publishing Company*, 672 P.2d 1146, 1147, note 3 (Okla.1983). When collateral estoppel (issue preclusion) is invoked, the point upon which the plea of estoppel is based must be in issue in the present action and must have been in issue and decided in the former action. *Boy Scouts of America, Inc., v. Thompson*, 380 P.2d 705 (Okla.1963); *Flick v. Crouch*, 434 P.2d 256 (Okla.1967).

■ Orders denying intervention are final, appealable orders. Rule 1.10(a)(14)(5); *Gettler v. Cities Service Company*, 739 P.2d 515 (Okla.1987). All issues raised in a petitioning intervenor's motion to intervene may be afforded preclusive effect if such were fully litigated and result in an adjudication on the merits. *Castro Convertible Corporation v. Castro*, 596 F.2d 123 (5th Cir.1979); *Saunders v. Bankston*, 31 Colo. App. 551, 506 P.2d 1253 (1972).

In *Gettler v. Cities Service Company*, *supra*, the Oklahoma Supreme Court outlined four countervailing interests when applying joinder and intervention statutes. The third such interest is the interest of third parties in having access to a forum when there is a possibility that stare decisis, res judicata or collateral estoppel may subsequently prevent them from seeking redress if not made a party to the original action. *Gettler*, at 517.

■ FEC maintains Temeron is precluded not only from litigating the issue of whether Temeron received a valid assignment of *Ferraro v. Enron*, but also precluded from maintaining this action which is based on breach of contract. We disagree. There is no evidence in the record to suggest Temeron, effectively a "nonparty" to the first action, had an opportunity to fully litigate its claims for breach of contract in the first action. In the first action, FEC as plaintiff was seeking a money judgment from Northern, the defendant, for monies due under their gas purchase agreement. Thus, res judicata cannot be utilized to preclude Temeron from maintaining this action against FEC for breach of contract and against Northern for interference of contract. Furthermore, FEC maintained, during the intervention proceedings, that issues pressed in Temeron's intervention motion were based on facts different from the main cause of action and that Temeron should maintain a separate action.[1]

There is only minimal evidence in the record to suggest Temeron had the opportunity to "fully litigate" the issue of whether Temeron had received an assignment of FEC's cause of action against Northern. There is no transcript of the hearing and the trial court's order simply states: "There is no evidence of a written agreement." FEC wants us to interpret this one sentence as a final, judicial determination that Temeron does not have a valid, written assignment of FEC's cause of action

---

1. Temeron argues FEC should be judicially estopped from arguing this action is barred by res judicata and collateral estoppel because FEC told the trial court during the intervention proceedings that Temeron could maintain a separate action. While we recognize judicial estoppel as a form of preclusion, it is applied only to prevent advancement of inconsistent positions regarding matters of fact. It does not prevent a party from asserting a legal theory contrary to one advanced earlier in litigation. *Panama Processes v. Cities Service Company*, 796 P.2d 276, 286 (Okla.1990).

against Northern, that such was required by the terms of the consulting agreement and without such assignment, Temeron cannot maintain a cause of action against either FEC or Northern on the consulting agreement. This we cannot do.

When considering Temeron's motion to intervene, the trial court was undoubtedly applying the requirements of 12 O.S.1991, § 2024 and trying to determine whether Temeron had a conditional or unconditional right to intervene, whether Temeron claimed an interest relating to the property or transaction which is the subject of the action, and whether Temeron's claim had a question of law or fact in common with the main action. Because the trial court did not make any other specific findings regarding the exact nature of the denial of Temeron's intervention, we will not infer that such decision was based in whole on whether Temeron had a valid assignment of *Ferraro v. Enron.*[2]

Considering the record and the specifically recognized interest in ensuring Temeron a forum to litigate its action, we find the trial court's order denying Temeron intervention, in Cause No. 87–1248, does not preclude Temeron from maintaining this action against FEC and Northern, nor does it preclude Temeron from litigating the issue of whether it has a valid assignment of FEC's cause of action against Northern.

 FEC's second argument in the motion for summary judgment is that Temeron cannot recover money for services it rendered to FEC under the consulting agreement because such services were rendered in anticipation of receiving a contract. FEC is correct in stating compensation under quasi-contract is not mandated where services were rendered in the expectation of a hoped-for contract or simply to gain a business advantage. *Maple Island Farm, Inc. v. Bitterling*, 209 F.2d 867 (8th

Cir.1954); *North American Financial Group, Ltd. v. S.M.R. Enterprises, Inc.,* 583 F.Supp. 691 (N.D.Ill.1984). In an affidavit attached to the response to the motion for summary judgment, Temeron detailed the services which it performed for FEC *after* the execution of the consulting agreement. Thus, the uncontroverted evidence shows Temeron did render those services after the execution of the consulting service agreement.

FEC argues that under the terms of the consulting agreement, Temeron was to be paid nothing at all for these services and that Temeron can only recover compensation under the consulting agreement through the contingent fee provision, which in turn, is only triggered if Temeron has an assignment of a claim. The consulting agreement contains several provisions regarding payment or nonpayment for certain services which were to be rendered by Temeron. Under the agreement, Temeron specifically agreed to provide certain services for "no charge" and to assume all costs associated with the negotiation and litigation of FEC's claims. Whether or not the services described by Temeron fall within these provisions is a question of fact to be determined by the trier of fact. A genuine issue exists as to the type of services rendered by Temeron and whether Temeron is entitled to be compensated under the contract or in quasi-contract for such services.

 In our review of an order granting summary judgment, we must determine if the evidentiary matter supporting or opposing the motion reflects any substantial controversy as to any material fact. *Flanders v. Crane Co.*, 693 P.2d 602 (Okla. 1984). If under the evidence, reasonable people could reach different conclusions from the facts, summary judgment should not be granted. *Hargrave v. Canadian*

---

**2.** Even if the record supported a determination that issue preclusion should bar Temeron's litigation of the existence or non-existence of an assignment of FEC's cause of action against Northern, Temeron could still maintain this action against both parties because this action is grounded in the breach and wrongful interference of the *consulting agreement.* The consult-

ing agreement gave Temeron certain rights, among those, the *option to obtain an assignment* of any claim identified by Temeron, within a four-year period. The non-existence of an assignment under the consulting agreement does not prevent Temeron from suing on the consulting agreement.

*Valley Electric Co-operative, Inc.*, 792 P.2d 50 (Okla.1990). All inferences in the evidence must be taken in favor of the party opposing the motion. *Id.*, at 55. With these guidelines in mind, we conclude the trial court erred in granting FEC's motion for summary judgment.

The trial court granted Northern's motion to dismiss, which was made pursuant to 12 O.S.1991, § 2012(B)(6) and predicated on two grounds: first, that Temeron failed to allege a contractual right with which Northern could interfere and second, that the agreement between FEC and Temeron was champertous and therefore void.

■ The general rule is that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt, that Temeron can prove no set of facts in support of the claim which would entitle it to relief. *Niemeyer v. United States Fidelity and Guaranty Company*, 789 P.2d 1318 (Okla.1990).

In its amended petition, Temeron alleged the execution and purpose of the consulting service agreement, Temeron's discovery while performing under the agreement of Northern's systematic underpayment to FEC under its gas purchase contract, and the events leading up to and including the breach of the consulting service agreement by FEC. Temeron seeks compensatory and punitive damages for Northern's tortious interference with the consulting agreement.

■ An action for tortious interference of contract arises when one maliciously interferes in a contract between two parties, inducing one of them to break the contract to the detriment of the other. *Id.*, at 1320. The elements of the action are:

1. that the plaintiff had a business or contractual right that was interfered with;

2. that the interference was malicious and wrongful, and that such interference

was neither justified, privileged nor excusable, and

3. that damage was proximately caused as a result of the interference.

*Mac Adjustment, Inc. v. Property Loss Research Bureau*, 595 P.2d 427 (Okla. 1979).

■ Northern mischaracterizes the essence of Temeron's claim. Temeron is asserting intentional interference with the consulting service agreement, not Northern's interference in the prosecution of *Ferraro v. Enron*. As noted in footnote 2, *infra*, Temeron need not plead and prove the existence of an assignment of the *Ferraro v. Enron* cause of action in order to withstand the motion to dismiss. From the facts alleged in the petition, Temeron had a right to obtain an assignment of the cause of action *Ferraro v. Enron* pursuant to the terms of the consulting agreement. It is this right with which Northern is accused of interfering. Recognizing that notice pleading only requires a short and plain statement of the claim which will give the defendant fair notice of plaintiff's claim, we hold the trial court erred in sustaining Northern's motion to dismiss. *Niemeyer*, at 1320–1321; 12 O.S.1991, § 2008.

■ Northern's second contention, that the consulting service agreement between Temeron and FEC is champertous and therefore void, similarly is not sufficient grounds to dismiss Temeron's cause of action.

■ The gist of the offense or act of champerty and maintenance is an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it. *Mitchell v. Amerada Hess Corporation*, 638 P.2d 441, 444 (Okla.1982), citing *Worrell v. Roxana Petroleum Corp.*, 144 Okla. 297, 291 P. 47 (1930). Whether an agreement is champertous or not is a mixed question of law and fact. *Mitchell*, at 444. The doctrine of champerty is strictly limited in Oklahoma.[3]

---

3. The doctrine of champerty has been narrowly applied, as discussed thoroughly in *Mitchell* and *Worrell*. In Oklahoma, there are only two statutes regulating conduct which falls under the rubric of champerty: contingent fees of attorneys, 5 O.S.1991, § 7 and purchase of real estate interests, 21 O.S.1991, § 547.

To demonstrate a contract is champertous, Northern must demonstrate Temeron officiously intermeddled in the suit and lacked an interest in the subject matter of the suit. *Mitchell*, at 444. When champerty is asserted as a defense or ground of dismissal, questions of fact, such as good faith, intent and primary purpose of the agreement should be determined at a hearing by the trier of facts. 14 C.J.S *Champerty & Maintenance*, Section 24 (1991).

The trial court had before it the consulting service agreement and other documents relating to the termination of Temeron's services. Northern presented no evidence to establish the good faith of the parties, the intent and purpose of the agreement, or whether "officious intermeddling" occurred. The agreement does grant to Temeron the right to take an assignment of any and all claims Temeron identified and if Temeron elected to take assignment on its own account, Temeron would pay FEC 50% of any amount recovered from a settlement or litigation. It is generally accepted that a bona fide purchaser or assignee of a mere right of action is not guilty of champerty, except in cases where the rule has been changed by statute. 14 C.J.S. *Champerty & Maintenance*, Section 5 (1991). Because the consulting service agreement cannot be said to be champertous on its face, that is, as a matter of law, the trial court erred in dismissing Temeron's amended petition on such basis.

For these reasons, we hereby REVERSE the trial court's order which granted FEC's motion for summary judgment and Northern's motion to dismiss and REMAND this action for proceedings not inconsistent with this opinion.

BAILEY, P.J., and HUNTER, J. concur.

